```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 22-cr-20521-RNS-1
 3
       UNITED STATES OF AMERICA,              Miami, Florida
 4
                     Plaintiff,               November 17, 2022
 5
            vs.
 6
       THEODORE FARNSWORTH,
 7
                     Defendant.               Pages 1 to 56
 8     _____

 9          TRANSCRIPT OF FIRST APPEARANCE AND ARRAIGNMENT
                BEFORE THE HONORABLE MELISSA DAMIAN
10                 UNITED STATES MAGISTRATE JUDGE
       APPEARANCES:
11
       FOR THE GOVERNMENT:    U. S. DEPARTMENT OF JUSTICE
12                            BLAKE GOEBEL, ESQ.
                              1400 New York Avenue, NW
13                            Washington, DC 20530

14     FOR THE DEFENDANT:     BELL ROSQUETE REYES, PLLC
       Theodore Farnsworth    HENRY P. BELL, ESQ.
15                            999 Ponce De Leon Boulevard
                              Suite 1200
16                            Coral Gables, Florida 33134

17                            MCGUIRE WOODS LLP
                              JASON H. COWLEY, ESQ.
18                            1251 6th Avenue
                              20th Floor
19                            New York, New York 10020

20     FOR THE DEFENDANT:     BELL ROSQUETE REYES, PLLC
       Jay M. Lowe            HENRY P. BELL, ESQ.
21                            999 Ponce De Leon Boulevard
                              Suite 1200
22                            Coral Gables, Florida 33134
       STENOGRAPHICALLY REPORTED BY:
23
                              LAURA E. MELTON, RMR, CRR, FPR
24                            Official Court Reporter
                              United States District Court
25                            400 North Miami Avenue
                              Miami, Florida 33128
```

1          (Call to the Order of the Court.)

2          THE COURT:  All right.  So, good afternoon to all of

3    you.  We are going to start out by calling each of your names,

4    and when we call your name, just acknowledge, you could just

5    raise your hand or whatever you can do to acknowledge.

6          (Other defendants called.)

7          COURTROOM DEPUTY:  Theodore Farnsworth.

8          (Other defendants called.)

9          THE COURT:  Okay.

10          Thank you.  Now, what we're going to do is we're going

11    to have you all sworn in.  So, to the best of your ability,

12    raise your right hand.

13          COURTROOM DEPUTY:  Please stand.

14          THE COURT:  And stand.  Sorry.  And back --

15          COURTROOM DEPUTY:  Do you solemnly swear or affirm that

16    the testimony you are about to give is the truth, the whole

17    truth and nothing but the truth, so help you God?  Reply I do.

18          DEFENDANTS:  I do.

19          COURTROOM DEPUTY:  Thank you.  You may have a seat.

20          THE COURT:  All right.  So you're all here today

21    because the United States has filed a federal criminal charge

22    or charges against you.  We are going to discuss your

23    particular case and charges and the maximum penalties for those

24    charges when I call your case individually.

25          For now, I just want you all to understand that the

1    government alleges that each of you has committed a federal

2    crime.  I'm not asking you today if you did those things.  I'm

3    going to only be asking you if you understand the -- that that

4    is what the government claims you did.

5         Each of you has the right to remain silent and not make

6    any statements today.  Any statements you make could be used

7    against you in your case, in other court cases, and in

8    deportation or removal proceedings.

9         Even if you have already made a statement to law

10   enforcement, you have the right to remain silent today.

11        If you're not a United States citizen, a conviction in

12   this case could affect your ability to stay in the

13   United States.  You have the right to request that the

14   government notify a consular official from your country of

15   nationality that you have been arrested.  Even if you don't

16   ask, there may be a treaty or other international agreement

17   that requires that your country be notified, and it's up to the

18   government to determine whether notification is required and to

19   comply with that requirement.

20        Finally, you all have the right to be represented by

21   counsel if you cannot afford to hire your own attorney, I'm

22   going to ask you some questions to see if you qualify for a

23   free lawyer when it's your turn.  At this point, as to

24   everybody who is here today, I'm going to admonish the

25   government to provide all information required by

1    Brady -- within the scope of Brady v. Maryland and its progeny,

2    this includes any evidence tending to show that the defendant

3    is not guilty, any evidence that could be used to impeach the

4    government's witnesses, or any evidence that could be used to

5    mitigate punishment.

6         The government must produce this evidence even without

7    a formal demand from the defense.  Failure to timely provide

8    this evidence could result in sanctions, including contempt of

9    court or dismissal of charges.

10        All right.  So what we're going to do now is we're

11   going to call up each of your cases individually.

12        (Other cases called.)

13        COURTROOM DEPUTY:  United States vs. Theodore

14   Farnsworth, Case Number 22, criminal, 20521, Scola, sealed.

15        THE COURT:  Okay.  I know that Mr. Farnsworth and

16   Mr. Lowe are in the same case, but I'm going to address you

17   separately, but you can both come up.  So you can call both of

18   them.

19        COURTROOM DEPUTY:  Okay.  Also calling Jay Mitchell

20   Lowe, Case Numbers 22, criminal, 20521, Scola, sealed.

21        Counsel please state your appearances, beginning with

22   the government.

23        MR. GOEBEL:  Good afternoon, Your Honor.  Blake Goebel

24   down from the DOJ Criminal Division on behalf of the government

25   on both of these matters.

1           THE COURT:  Good afternoon to you.

2           MR. GOEBEL:  I see they are both still sealed.  We

3   would move to unseal both of these.

4           THE COURT:  Great.  Okay.  So ordered.

5           Let's see.  And did you -- all right.  I thought I

6   had -- I have two orders to unseal.  Does that mean that

7   defense counsel has not yet had a chance to see the

8   indictments?

9           MR. BELL:  We have copies of the indictments,

10  Your Honor.

11          THE COURT:  Okay, okay.  Good.

12          MR. BELL:  The defendants appeared -- at least our

13  client appeared in the District of Columbia and we got a copy

14  there.

15          THE COURT:  Okay.  So it's unsealed here for purposes

16  of the Southern District of Florida.

17          MR. BELL:  Correct.

18          THE COURT:  Okay.

19          All right.  So let's start -- both of you are here, and

20  I know that you have now seen a copy of the charges against

21  you.  Mr. Farnsworth -- which one is Farnsworth -- have you

22  seen a copy of the indictment against you?

23          DEFENDANT FARNSWORTH:  Yes, I have, Your Honor.

24          THE COURT:  Mr. Lowe, have you seen a copy of the

25  indictment against you?

 1          DEFENDANT LOWE:  Yes, I have, Your Honor.

 2          THE COURT:  And have you had a chance to talk over

 3   them, the charges with your attorneys?

 4          DEFENDANT LOWE:  Yes, Your Honor.

 5          DEFENDANT FARNSWORTH:  Yes, I have.

 6          THE COURT:  So I'm not going to need to go through the

 7   details of the charges against you.  Suffice it to say -- there

 8   is no penalty sheet.  Does it usually have a penalty sheet at

 9   the end that tells me -- oh, it's attached.

10          Okay.  All right.  So suffice it to say, as to

11   Mr. Farnsworth, you have been charged with one count of

12   securities fraud, which carries a maximum term of imprisonment

13   of 20 years, with a maximum term of supervised release that's

14   three years, and a fine that is either $5 million or twice the

15   gross gain or loss from the offense.  And as to Counts 2, 3, 4,

16   charging wire fraud, that -- those also carry a 20 -- a maximum

17   term of 20 years and a maximum term of supervised release of

18   three years with a maximum fine of $250,000 or twice the gross

19   gain or loss from the offense.

20          Mr. Lowe, it appears you guys are charged in exactly

21   the same counts, so the same maximum penalties apply to

22   Mr. Lowe as Mr. Farnsworth.

23          Do you both understand that?  Mr. Farnsworth?

24          DEFENDANT FARNSWORTH:  Yes, I do, Your Honor.

25          THE COURT:  And Mr. Lowe?

1          DEFENDANT LOWE:  Yes, Your Honor.

2          THE COURT:  Okay.  What's the government's position on

3     bond?

4          MR. GOEBEL:  Yes, Your Honor.  So as defense counsel

5     noted, both defendants have initially appeared elsewhere;

6     Mr. Farnsworth in DC and Mr. Lowe in the Eastern District of

7     New York.  We have an agreement with both defendants to modify

8     their bond conditions from what was ordered there, change their

9     travel restrictions, and then also we have an agreement with

10    Mr. Lowe to add one special condition of release.  And

11    Mr. Farnsworth disputes that special condition of release.  I

12    think that's the one point of disagreement between all of these

13    defendants, is that one special condition.

14         THE COURT:  Okay.  So let's talk to -- first to

15    Mr. Farnsworth.  Who is here on behalf of Mr. Farnsworth?

16         MR. BELL:  Hello, Your Honor.  Henry Bell along with

17    Jason Cowley with the McGuire Woods firm on behalf of

18    Mr. Farnsworth.

19         Judge, because the case was sealed, I couldn't file a

20    pro hac application on behalf of Mr. Cowley before we arrived

21    here today.  Nevertheless, I would kindly ask that you permit

22    him to represent our client here today, subject to providing

23    the application.

24         He is admitted in the Southern District of New York and

25    in North Carolina, and he is already representing our client in

1    a parallel SEC action brought in the Southern District of

2    New York, and he has been already admitted in this district in

3    the past with our firm in support of the pro hac applications.

4    So if you don't mind, I --

5              THE COURT:  Is there a -- is there a corresponding

6    enforcement action going on down here?

7              MR. BELL:  No, it's in New York.

8              THE COURT:  Oh, okay.

9              Okay.  So C-A-L-I-E-B?

10             MR. BELL:  So it's C-O-W-L-E-Y.  And his first name

11   is --

12             THE COURT:  I wasn't even close.  Sorry.

13             MR. BELL:  That's my fault, Your Honor.  I apologize.

14   First name is Jason.  And, again, it's the McGuire Woods firm.

15             THE COURT:  Okay.  You -- you still, if you can --

16             MR. BELL:  Of course.

17             THE COURT:  -- for purposes of today, I will admit you

18   ore tenus, but please file the paperwork.

19             MR. BELL:  100 percent, we will absolutely do that.

20             THE COURT:  Okay.  So, then, Mr. Cowley, you are going

21   to be representing Mr. Farnsworth for purposes of today?

22             MR. COWLEY:  Yes, Your Honor.

23             THE COURT:  Okay.  So tell me -- because I don't think

24   I have it -- what is the current bond?

25             MR. COWLEY:  Yes.  I'm happy to go through the current

1    bond which was imposed in DC, and I can walk through the

2    conditions that we have reached agreement on, and then I can

3    flag the one issue that is subject to dispute.

4              THE COURT:  Okay.

5              MR. COWLEY:  So with respect to the conditions that

6    were imposed in DC, travel was limited between the Northern

7    District of New York where Mr. Farnsworth -- where he generally

8    resides in the Syracuse area, and here in the Southern District

9    of Florida, obviously because the case is here, and travel in

10   between, there was no financial component imposed at the time

11   in DC in terms of a financial bond, which we will add that

12   today.

13             And then the additional conditions were generally

14   standard:  Surrender travel documents, not possess a firearm,

15   no contacts with any of the potential victims or witnesses in

16   the case.

17             So those were the conditions that were imposed in DC.

18             In terms of the conditions that we've reached consent

19   on today, a few slight changes or additions.  So in terms of

20   travel restrictions, in addition to the Northern District of

21   New York and the Southern District of Florida, we have agreed

22   with the government that Mr. Farnsworth can also travel to the

23   Southern District of New York for business purposes.  And in

24   addition to that, then Mr. Farnsworth can also travel to the DC

25   metropolitan area to meet with his counsel for purposes of

1   preparing for this case.

2          Additionally, the government and Mr. Farnsworth agree

3   that additional travel within the domestic United States can be

4   approved by Pretrial Services without the need for further

5   relief from the Court.

6          And, finally, with relation to that, so long as

7   Pretrial Services here is amenable, we think it's more

8   appropriate for Mr. Farnsworth to be supervised out of the

9   Northern District of New York because that's where he will

10  generally be residing.

11         So in addition to that, he will surrender his passport,

12  avoid possessing a firearm, avoiding contact with potential

13  victims or witnesses.

14         In terms of the financial component, what we have

15  agreed upon is a $1 million personal surety bond to be cosigned

16  by his -- his long-time partner, Mr. Roderick Vanderbilt.  And

17  in addition to that, Mr. Vanderbilt owns a condo here in Miami.

18  The net equity value of that is approximately $1 million,

19  between 900,000 and $1.1 million.  And Mr. Roderick will be

20  putting that up as security for the bond.

21         Mr. Roderick is not present in the Southern District of

22  Florida.  The government and -- and we are making arrangements

23  for him to execute the bond.  But what we would ask, in an

24  abundance of caution, is if we could have until next Tuesday,

25  which I believe is the 22nd, to have all of the documents

1   executed, Your Honor.

2          And those are the conditions we agree upon.  And if

3   you're ready, I'm happy to talk about the conditions we

4   disagree -- the one condition we disagree on, and perhaps --

5          THE COURT:  Okay.  Hold on.

6          And, I'm sorry, tell me -- it's -- are you on the

7   indictment?

8          MR. GOEBEL:  Mr. Goebel, Your Honor.

9          THE COURT:  G-O-B-U-L?

10         MR. GOEBEL:  G-O-E-B-E-L.

11         THE COURT:  All right.  I was a little closer with you.

12         Okay.  Mr. Goebel, as far as the conditions that

13   Mr. Cowley already identified as agreed, is that accurate?

14         MR. GOEBEL:  Yes, Your Honor, that's accurate.  The

15   only very minor point is I'm being supervised by the Northern

16   District of New York.  The government is fine with that.  We

17   think that makes sense, as long as it's amenable to pretrial

18   here.

19         THE COURT:  Okay.  So how -- how does that work?

20         PRETRIAL SERVICES:  Good afternoon, Your Honor.

21         We would just request courtesy supervision from the

22   Northern District of New York and provide them with all the

23   documents from today and what the final bond is.

24         THE COURT:  So the final bond will be issued out of the

25   Southern District of Florida.  So, technically, he is under

1    supervision by the Southern District of Florida, but the

2    Southern -- the Northern District of New York will actually be

3    doing the supervision.  If he is reporting, he is reporting to

4    them?  Is that how it works?

5         PRETRIAL SERVICES:  Correct.  And there will be an

6    officer from our district here that will be assigned to

7    monitor, like, court hearings, and anything that needs to be

8    notified to the district up there.  It's -- it's our case, but

9    he will have an officer in the other district that will

10   supervise him there.

11        THE COURT:  Okay.  All right.  Got it.

12        Okay.  So all of these terms that are agreed-upon are

13   agreeable to the Court as long as they're agreeable to Pretrial

14   Services.  You have been following --

15        PRETRIAL SERVICES:  Trying.  It's kind of hard to hear

16   the government from here.  I don't think he is close to the

17   mic.

18        THE COURT:  Oh, you are not next to a microphone.

19        MR. COWLEY:  I will do a better job speaking into the

20   microphone.  I will sit with pretrial afterwards and we will --

21        THE COURT:  Yeah, you guys can go over the paperwork

22   together at the end.  And then -- because we will need

23   the -- the Vanderbilt -- what was Vanderbilt's first name?

24        MR. COWLEY:  Roderick, Your Honor.

25        THE COURT:  Roderick.

1          Okay.  And then as far as Mr. Vanderbilt goes, and that

2     property goes, there is a pretty much automatic condition that

3     he cannot pledge, mortgage, hypothecate, do anything to lien on

4     that property.

5          MR. COWLEY:  Understood.  And fully agree, Your Honor.

6          THE COURT:  Okay.  All right.  So then let's turn

7     to -- and when you say that there are conditions that you

8     disagree on, is it that the government is requesting conditions

9     you don't -- okay.  So let me hear from the government.

10          MR. GOEBEL:  Thank you, Your Honor.

11          So, in addition to that, we would request a special

12     condition that the defendant be prohibited from offering or

13     promoting any securities, including equity, debt, or hybrid

14     securities, without the permission of the government or

15     Pretrial Services.

16          And now, obviously, this is a specific condition based

17     on the -- the facts of the case.  And, as alleged in the

18     indictment, the defendant was an executive of a publicly-traded

19     company.  Obviously, at this point the defense is going to

20     dispute the allegations in the indictment, but the allegations

21     are that the -- the defendant was an executive over the time

22     period of the charged fraudulent scheme.  The publicly-traded

23     company raised over $100 million in securities.  As alleged,

24     both defendants, including Defendant Farnsworth, made a number

25     of important material false statements to investors in order to

1    carry out the scheme, and diverted some of the proceeds of the

2    scheme for their personal benefit.

3          So from the government's perspective, our concern

4    is -- and just -- just so we're all clear, the -- this scheme

5    is -- is over -- the company that the defendant was working

6    with, he no longer is working with that company.

7          THE COURT:  Okay.

8          MR. GOEBEL:  But the government only has so much

9    information about the defendant's current business activities.

10   And we're concerned that without this sort of restriction, that

11   the defendant, again, is going to get himself involved with a

12   company and make false statements to investors and carry out

13   another fraudulent scheme.  So we feel it's an economic danger

14   to the community.  We're not trying to keep the defendant

15   from -- from working.  We're not trying to restrict him from

16   being an officer or director of a company or anything like

17   that, but we feel like this condition is narrowly tailored to

18   protect the public based on the allegations in the indictment.

19         THE COURT:  So you're not -- you don't want to prevent

20   him from being an officer or a director of a company -- of a

21   publicly-traded company.  Or do you?

22         You don't want him to trade -- buy, sell, trade

23   anything like that, but are you saying he cannot be affiliated

24   with a publicly-traded company?

25         MR. GOEBEL:  We're not going that far.  We've talked to

1    defense counsel about this.  We are just seeking that he not

2    offer or promote securities --

3              THE COURT:  Securities.

4              MR. GOEBEL:  -- trying to get at the situation where he

5    is -- affiliates himself with a company and then he is, again,

6    raising money from investors fraudulently.

7              THE COURT:  So let me ask a question.  What is the

8    status -- this is usually something that the SEC does in the

9    SEC enforcement action.  What happened in that -- with that?

10             MR. COWLEY:  Yeah, I'm happy to talk about that,

11   Your Honor, because I do think this is really putting the cart

12   before the horse.  That is actually one of the things that the

13   SEC is seeking as part of their judgment after a finding of

14   liability against Mr. Farnsworth in the action.  So they only

15   recently filed the SEC action; that was filed in the Southern

16   District of New York.  We plan on vigorously contesting that

17   proceeding.  We are planning on filing a motion to dismiss.

18             But the SEC which is obviously the primary regulator of

19   the securities industry has not moved or obtained any sort of

20   pretrial limitation on Mr. Farnsworth -- of ability to do these

21   things.

22             THE COURT:  There is no preliminary injunction in place

23   by the SEC?

24             MR. COWLEY:  No, Your Honor.

25             THE COURT:  They just -- they just filed an enforcement

1    complaint?

2           MR. COWLEY:  They filed their enforcement complaint.

3    We are going to regulate that out.  And one of the components

4    of the remedy they're ultimately seeking, if there is a finding

5    of liability, is exactly this condition.  And really, what's

6    happening here is the DOJ is trying to impose that on the front

7    end of the criminal case rather than where it should be, which

8    is the back end of the SEC action.

9           THE COURT:  Has the SEC even requested it in the civil

10   action, do you know?  I mean, they just started?  When did they

11   file the civil enforcement action?

12          MR. COWLEY:  I think approximately a month ago.

13          MR. GOEBEL:  Summer.

14          THE COURT:  Okay.  So then --

15          MR. GOEBEL:  I guess -- sorry to interrupt, Your Honor.

16   Just if I could.

17          THE COURT:  Uh-huh.

18          MR. GOEBEL:  Defense counsel's point is well taken, but

19   just because the SEC didn't seek a preliminary --

20          THE COURT:  It's not determinative for me.  I was

21   just -- for me, normally the -- if they're -- if they're

22   companion cases, it is something that the SEC seeks in a

23   preliminary injunction and usually they get it.

24          MR. GOEBEL:  Understood.

25          THE COURT:  So I'm curious why they didn't move for

1    preliminary injunction.

2            Tell me a little bit about what Mr. Farnsworth is doing

3    now.

4            MR. COWLEY:  I -- I -- gladly, Your Honor, if you will

5    indulge me.  I'm very interested in telling you that and a few

6    other things with the Court's permission.

7            So Mr. Farnsworth -- I should start with the

8    allegations that we're talking about in the indictment.  So

9    this makes -- the publicly-traded company at issue was called

10   Helios & Matheson.  It was traded on the NASDAQ and it owned

11   MoviePass.  It acquired this company called MoviePass, you may

12   have heard of.

13           And essentially the allegations in the indictment are

14   that Mr. Farnsworth and Mr. Lowe made some public statements

15   that the government contends are -- were inaccurate.  We

16   obviously have a major difference of opinion with respect to

17   that, but I think what is beyond dispute is that there is no

18   allegations in the indictment that it was a fake company or

19   there was a fake product, or even had single dollar or a single

20   Q or a single K was wrong.

21           THE COURT:  Okay.

22           MR. COWLEY:  This is more sort of about public

23   statements, about whether or not the company was going to be

24   viable at a particular subscription price, things like that.

25           THE COURT:  Okay.

1          MR. COWLEY:  Additionally, in the Qs and the Ks -- I

2    won't go through them today chapter and verse -- but they make

3    it clear -- it was very clear publicly at the time that the

4    company was hemorrhaging money and that the company was not

5    profitable yet.

6          THE COURT:  Okay.

7          MR. COWLEY:  Probably, more importantly for today's

8    discussion, this conduct is very old.  So even by the -- the

9    charge and the dispute in the indictment that scheme is alleged

10   to have ended in March of 2019.  Helios & Matheson was delisted

11   from NASDAQ in February of '19, and I believe the last act

12   involving Mr. Farnsworth personally in the indictment was from

13   the summer of 2018.  So we're talking about extremely old

14   conduct here.

15         Now, since then, Mr. Farnsworth has gone on to many

16   other business ventures, including ventures that are taking

17   place now.  And this -- this requested provision bumps squarely

18   into them.

19         One of the things that Mr. Farnsworth is involved in is

20   ongoing transactions relating to the purchase or sale of

21   companies; that is something that he has done since then and

22   will continue to do, that doesn't necessarily entails the

23   securities issues.  If you want to raise money to purchase a

24   company, you are going to be issuing debt securities or equity

25   securities, things like that.

 1          He has been going on and living his life, you know, for

 2     the past 3 1/2, 4 years since MoviePass, no prior convictions,

 3     no allegations from the government of any misconduct subsequent

 4     to that.  And he will be filing -- unfair as a punitive to

 5     impose this condition on him now.

 6          And a few other points with respect to this.  It's not

 7     only old conduct, and I think it's not called for generally,

 8     but the Bail Reform Act, it specifically says you impose the

 9     least restrictive set of conditions.  The fact that the conduct

10     is so old, and the fact that it is -- generally, that the

11     government is only charging this now, after a very

12     well-publicized failure of a company many years ago, I think

13     undermines the argument that there is somehow some credible,

14     specific cognizable risk to the community with respect to that.

15          It's also punitive in that there is transactions that

16     he is involved in right now that could be substantially

17     implicated by this that's involving Mr. -- unfair to

18     Mr. Farnsworth and could expose him to civil litigation, some

19     to counterparties in these transactions.

20          And then my final point on this is that it's unworkable

21     mechanically.  That, as I understand the government's request,

22     it's that, essentially, the DOJ or Pretrial Services would have

23     veto power over -- over any securities that Mr. Farnsworth

24     would like to have or would be involved in trying to issue,

25     you know, including raising money to purchase other companies,

1    things like that.

2          Deals like this are covered by SEC regulations,

3    relating to disclosure, obligations, and limitations.  They're

4    covered by confidentiality agreements.  You know, all of these

5    things make what they're trying to do profoundly unworkable.  I

6    would also submit respectfully, institutionally it's an

7    inappropriate thing to ask Pretrial Services, you know, an arm

8    of the Court, to essentially say, you know, yea or nay with

9    respect to complicated corporate transactions.

10         And the same with DOJ.  It's inappropriate

11   institutionally and unworkable for all of these various

12   reasons.

13         Now, you have the following, you know, an obvious

14   fundamental point of availed conditions against Mr. Farnsworth

15   are that he not commit any crimes or not -- not break the law.

16   He knows that.  He knows that if he does that, then that will

17   have consequences in terms of his -- his bail going forward,

18   and that should be enough to deter him from committing

19   any -- any misconduct.

20         And, of course, we are here under the presumption of

21   innocence, not a presumption of guilt.  This is something that

22   the SEC wants to impose as a judgment if they find him liable;

23   they have not done so.  We should let that case play out and we

24   should not seek the ultimate relief the government wants in

25   terms of a pretrial bail commission here in the DOJ matter.

1              THE COURT:  Okay.  Thank you.

2              Are there any -- other than that condition, are there

3     any other conditions that you are disagreeing on?

4              MR. COWLEY:  No, Your Honor.

5              MR. GOEBEL:  No.

6              THE COURT:  Okay.  So I'm going to -- just so you know,

7     I'm looking at the -- at the SEC's complaint which seems to

8     mirror --

9              MR. COWLEY:  Yes, yeah, I think it's the same

10    underlying conduct that is at issue.

11             THE COURT:  Since -- so 2019 appears to be the end of

12    the alleged conduct here; correct?

13             MR. COWLEY:  Correct, Your Honor.

14             THE COURT:  So since then, is it alleged that

15    Mr. Farnsworth has been involved in any other

16    misrepresentation -- I mean, is it unindicted conduct

17    that -- or I don't want to hold you to, you know, other charges

18    if they're forthcoming, but is there any allegation that in any

19    of his involvement since 2019 up until, looks like, August of

20    this year there are any allegations of misrepresentations or

21    misconduct as far as the business entities that he has been

22    involved with?

23             MR. GOEBEL:  Defense counsel is correct.  We're not

24    basing this request on any allegations of misconduct since the

25    end of the time period of the indictment.  I'd just emphasize

1    again, Your Honor, there has been a finding of probable cause

2    from the grand jury.  There are -- these are very serious

3    allegations, absolutely massive amount of money that's at

4    issue.

5         If the issue, as defense counsel raised, is DOJ or

6    Pretrial Services being involved, I mean, we're happy to get

7    out of it and just have the defendant make a motion to the

8    Court in order to participate in these types of transactions.

9    But we feel we need something like this in place in order to

10   protect the public.  I don't think it's punitive.  I think it

11   is the least restrictive condition that's needed in order to

12   protect the public in this case.

13        THE COURT:  My concern is that the way -- the way

14   Mr. Cowley is describing it, it basically makes Mr. Farnsworth

15   unable to do the business that he is doing now, that --

16        MR. COWLEY:  That's correct.  Including with respect to

17   transactions that are -- that are in play presently,

18   Your Honor.

19        THE COURT:  So -- and I have only had a chance to

20   glance at the allegations in this indictment and briefly glance

21   at the SEC's allegations.  It appears -- and from what

22   Mr. Cowley has explained and what you have explained, it

23   appears to be misrepresentation -- material misrepresentations

24   in public filings or in SEC disclosures and in public

25   statements regarding the other businesses in a nutshell.

 1          MR. GOEBEL:  Misrepresentations in a number of

 2   different ways.  Interviews with, like, media, news outlets,

 3   press releases, a number of different type of -- of public

 4   statements, not just in securities filings.

 5          THE COURT:  Okay.  So I'm going to table this for a

 6   moment.  And I want to hear about Mr. Lowe.  Because that's the

 7   only disagreement that we have as far as Mr. Farnsworth goes.

 8          So I'm going to have Mr. Farnsworth step aside for a

 9   moment, and let me hear what's going on with Mr. Lowe.

10          Who represents -- who is here on behalf Mr. Lowe?

11          MR. MITCHELL:  I do, Your Honor.  Matthew Mitchell on

12   behalf of Jay Mitchell Lowe.

13          THE COURT:  Hello, Mr. Mitchell.  How are you?  Nice to

14   you.

15          MR. MITCHELL:  Nice to see you, Your Honor.

16          THE COURT:  So -- and are you going to be representing

17   Mr. Lowe?  Or are you --

18          MR. MITCHELL:  Yes.

19          THE COURT:  Okay.  All right.  So tell me what the

20   circumstances are for Mr. Lowe, then.

21          MR. MITCHELL:  I think we have full agreement,

22   Your Honor.

23          As was mentioned, Mr. Lowe voluntarily surrendered in

24   the Eastern District of New York last Thursday.  The change in

25   his bond conditions from then to now would be that the bond

1    would be up to a million dollars, to be -- as the original bond

2    of $500,000 was to be cosigned by his brother Mark Lowe and his

3    sister-in-law Lynn Lowe.  They're also willing to pledge, as

4    security for that bond, their residence which has approximately

5    4- to $500,000 in equity.  They understand, Your Honor, the

6    ramifications of that and how they cannot in any way obviously

7    hypothecate or otherwise dispose of that property.  And

8    Mr. Lowe himself would also be depositing into the court

9    registry $50,000 in cash.

10          In addition to that, Your Honor, Mr. Lowe would be

11    required to live in the United States with his brother and

12    sister-in-law in the Northern District of California,

13    specifically a town called Healdsburg,

14    H-E-L -- H-E-A-L-D-S-B-U-R-G.  But with the understanding,

15    Your Honor, that he would be allowed periodic travel back to

16    Mexico to visit both his wife, his daughter-in-law, and his

17    rather elderly ill mother who lives in Mexico as well.

18          Upon -- you know, obviously with the approval of the

19    government and Pretrial Services, he would surrender his

20    passport to an agreed-upon third party upon entering Mexico and

21    then return it upon reentering the United States.

22          THE COURT:  Okay.  And the --

23          MR. MITCHELL:  I'm sorry.  One other thing.  I

24    apologize.  The travel would then be also limited to the

25    Northern District of California, where he would reside;

1   Seattle, Washington, where his three young children -- where

2   one of them is quite ill -- I believe that's the Western

3   District of Washington, if I'm correct; and then the Southern

4   District of Florida.

5          THE COURT:  And what about New York?

6          MR. MITCHELL:  New York is just the place he

7   surrendered.

8          THE COURT:  Oh.  Where is the SEC case pending?

9          MR. MITCHELL:  That's true.  We should keep it in

10  New York, although I have a feeling that's going to be stayed.

11  But we will see what happens.

12         THE COURT:  Okay.

13         Okay.  In case there needs -- well, usually it would be

14  the lawyers, but --

15         MR. MITCHELL:  Yes.

16         THE COURT:  Do you have an issue if he has to go to

17  New York for anything in the civil case?

18         MR. GOEBEL:  No, that's fine, Your Honor.  And if it's

19  helpful, the travel conditions that defense counsel laid out,

20  other than New York, were the same as the conditions of

21  released in Brooklyn.

22         THE COURT:  Okay.

23         MR. GOEBEL:  The addition is the travel to -- the

24  periodic travel to Mexico.

25         THE COURT:  Okay.  That -- that would be the change

1    from the previous bond.

2              MR. GOEBEL:  Yes.

3              THE COURT:  And the government doesn't oppose that?

4              MR. GOEBEL:  We don't, with some -- some specifics that

5    defense counsel had started to get into, that he'd give the

6    government and Pretrial advanced notice of the trips, including

7    a detailed itinerary.  While in Mexico, he will need to turn

8    his passport over to a third party, as defense counsel

9    mentioned.  And then when he returns to the U.S., he will need

10   to turn in his passport to Pretrial Services as directed.  The

11   government and defense have spoken about this.  I think it

12   makes the most sense for him to turn his passport into the

13   pretrial service to the Northern District of California.  I

14   don't think we need to address that --

15             THE COURT:  Because that's where he is going to be?

16             MR. GOEBEL:  Correct.  I think if we just say turn into

17   Pretrial Services as directed --

18             THE COURT:  So did you have it set up with -- because

19   it's a Miami case, it's -- Miami Pretrial Services has the

20   supervision technically, but you would have a Northern District

21   of California person charged with the supervision part there.

22             PRETRIAL SERVICES:  The party's supervision.

23             THE COURT:  Right?

24             MR. GOEBEL:  I think that --

25             THE COURT:  If he resides in the Northern District of

1    California.

2              MR. MITCHELL:  When living with his brother, yes.

3              MR. COWLEY:  I think that makes the most sense,

4    Your Honor.

5              THE COURT:  Okay.  So it's similar to what we were

6    doing with Mr. Farnsworth, also supervised out of the Southern

7    District of Florida but with the Northern District of New York

8    assigned.

9              PRETRIAL SERVICES:  Yes.  Just in this case it would be

10   the Northern District of California; we would be requesting

11   courtesy supervision from them.

12             THE COURT:  So let me go back to the monetary elements.

13             You said it's a $1 million personal surety?

14             MR. MITCHELL:  Yes.

15             THE COURT:  But then you said there is $50,000 cash

16   being deposited into the court registry --

17             MR. MITCHELL:  I guess a 5 percent bond, if you will.

18             THE COURT:  That's what it sounds like.

19             Okay.  And has that been deposited?  Or that will be

20   deposited?

21             MR. MITCHELL:  No.  This was just agreed upon this

22   morning.

23             THE COURT:  Is that accurate?

24             MR. GOEBEL:  That's accurate, Your Honor.

25             THE COURT:  Okay.  So it would be -- right.  That's

1   normally what we call the 10 percent.  I know it's called

2   different things in different places.

3          So with the cosigners being Mark and Lynn Lowe, they're

4   pledging their residence.  And they will have the condition

5   that they're not to mortgage or lien or hypothecate that

6   residence.

7          Okay.  I -- as long as the government's in agreement

8   with it, I agree that the travel to Mexico should be overseen

9   by Pretrial Services.  And I agree that if he's going to

10  travel, he needs to give advanced notice with a detailed

11  itinerary.  But otherwise, the passport remains in the custody

12  of his supervising officer in the Northern District of

13  California?  Does that make sense to you?

14         PRETRIAL SERVICES:  Yeah.  Because it will be easier

15  that way if they have custody of the passport over there.

16         THE COURT:  Okay.  Let me -- I realize it's not the

17  nature of this offense, but does either one of you own a

18  firearm?

19         DEFENDANT LOWE:  No.

20         THE COURT:  Okay.  I'm going to maintain also, that

21  nobody has a firearm in the home.

22         MR. GOEBEL:  Thank you, Your Honor.

23         MR. MITCHELL:  One second, please.

24         THE COURT:  Yeah, nobody where you are living.

25         Okay.  All right.  So then just to make sure it's --

1    Pretrial Services has this, we're -- we're -- he is going to

2    reside in the Northern District of California which is

3    Healdsburg, California.  He is going to be able to travel to

4    Seattle, Washington, which I agree, I think it's the Western

5    District of Washington, wherever Seattle is.  He is going to be

6    able to travel to the Southern District of Florida for purposes

7    of this case.

8           And in the event he needs to travel to the Southern

9    District of New York in connection with the SEC enforcement

10   action, he can travel to the Southern District of New York.

11          I also agree that any travel should be at the

12   discretion -- approval should be at the discretion of Pretrial

13   Services, so he doesn't have to come to the Court every time he

14   is going to travel, including if there is a request to travel

15   to a different city or district that's not in here.  You know,

16   he will have to go through his Pretrial Services officer, and

17   if it becomes a problem, then it can come to the Court.

18          Okay, everybody?

19          MR. GOEBEL:  Thank you.  Yes, Your Honor.

20          MR. MITCHELL:  Yes.

21          THE COURT:  Okay.  So then there is no disagreement on

22   any terms of the bond conditions for you?

23          MR. GOEBEL:  There is no disagreement on any of that,

24   Your Honor.  We have two more, I think, minor --

25          THE COURT:  Okay.

1          MR. GOEBEL:  -- agreed conditions.

2          One is, is that Defendant Lowe agreed to the special

3     condition that Defendant Farnsworth is objecting to.

4          THE COURT:  Okay.

5          MR. GOEBEL:  So that he be prohibited from the offering

6     or promotion of any securities including equity, debt, or

7     hybrid securities without the permission of the government or

8     Pretrial Services.

9          THE COURT:  That's the first one.

10         MR. GOEBEL:  And then the second -- that's the first

11    one, and then the second, we would just ask that Defendant Lowe

12    have the same prohibition that Defendant Farnsworth had on

13    contacting the victims or witnesses.  I think the standard

14    language in the Eastern District of New York is just not to

15    have any contact with codefendants.  We have provided a list to

16    counsel for Mr. Lowe and he was amenable to that list.

17         MR. MITCHELL:  That's correct.

18         THE COURT:  Okay.  So you already have a list agreed

19    on.  I don't need to go into it.

20         MR. MITCHELL:  Yes.

21         THE COURT:  Okay.  And then as far as the prohibition

22    from offering, promoting, selling any securities, have you also

23    agreed on language for that?  Are you just taking that out of

24    the Securities Act?

25         MR. MITCHELL:  We have agreed on the language

1   because -- I just wanted -- and, to be clear, this is really

2   relevant to Mr. Lowe which is why, frankly, we're agreeing to

3   it.  It has no impact on his life except obviously to sell his

4   own securities that are in his accounts for purposes of living

5   expenses and the like.  So I believe we worked out the specific

6   language to make sure that that's not being prohibited because,

7   obviously, he may want to do that in the future.

8          MR. GOEBEL:  That's correct, Your Honor.  We would have

9   no objection to him selling securities for those purposes.  And

10  honestly we wouldn't for --

11         THE COURT:  Mr. Farnsworth.

12         MR. GOEBEL:  -- Mr. Farnsworth either.

13         THE COURT:  Okay.  Well, then, I like agreeability.  So

14  then I'm going to have you -- so how long do you need to get

15  this bond paperwork?

16         MR. MITCHELL:  I was going to ask for two weeks because

17  of the real estate, not for the cash.  I think I can get that

18  relatively soon, if that is amenable to the Court.  And then,

19  also, we would like Mr. Lowe to be able to travel to the

20  Northern District of California on Monday because simply the

21  flights were a lot of cheaper than they would be between now

22  and Monday, and the government was amenable to that.

23         THE COURT:  All right.  So that is up to Pretrial.

24  That's for Pretrial Services.

25         MR. GOEBEL:  That's correct, Your Honor.

```
 1              If I could maybe just suggest on the bond.  If defense
 2    counsel thinks it's going to take a little while for the
 3    property piece of it, the government would be fine with that.
 4    But then maybe we could have two dates, the first date for --
 5              THE COURT:  I was going to say the same thing.
 6              MR. GOEBEL:  -- cosigning and all rest of the --
 7              THE COURT:  So why don't you get in all of the
 8    paperwork, have it signed by everybody, including the
 9    cosigners, with all the conditions.  They're signing off on the
10    conditions, but insofar as the requirements necessary to
11    reflect that they've pledged real estate, we will give you
12    two weeks on that.
13              How long do you think it would take you otherwise to
14    get all of the signatures?
15              MR. MITCHELL:  Can I have until next Tuesday just to be
16    safe.
17              THE COURT:  Are you okay with that?
18              MR. GOEBEL:  Yes, Your Honor.  They will be the
19    same --
20              THE COURT:  That's, like, right before Thanksgiving, so
21    you are going to want to get it --
22              MR. GOEBEL:  Same as the other defendant.
23              THE COURT:  Okay.
24              MR. GOEBEL:  Same timeline.
25              THE COURT:  All right.  So we will give you until close
```

1    of business on Tuesday, which -- what was that date?

2           COURTROOM DEPUTY:  November 22nd.

3           THE COURT:  November 22nd to get in the bond paperwork.

4           I will suggest that you both, Counsel, just make sure

5    you get together with the Pretrial Services officer before you

6    leave here today, just to make sure everybody is on the same

7    page.

8           MR. MITCHELL:  Yes, Your Honor.

9           THE COURT:  And then you will have until Tuesday, close

10   of business, on the -- all of the signatures and all of the

11   paperwork, except for the pledging of property.  And for that,

12   we will give you until Thursday -- you wanted two weeks.  So

13   that will be the 1st of December?

14          COURTROOM DEPUTY:  The 8th, Judge.  December 8th.

15          THE COURT:  No.

16          COURTROOM DEPUTY:  Is it?  Oh, no.  December 1st.  You

17   are right.  Sorry.

18          THE COURT:  December 1st.

19          Okay.  So you have until December 1st to make all of

20   the arrangements with whatever documentation you need that

21   reflects that the properties --

22          MR. MITCHELL:  One second, please, Your Honor.  May I

23   just confer with counsel?

24          THE COURT:  Yes.

25          MR. MITCHELL:  What my esteemed colleague is telling

1   me, Your Honor, Mr. Bell, referring to him --

2        MR. BELL:  I'm not that esteemed, Your Honor.

3        THE COURT:  You're quite esteemed.

4        MR. MITCHELL:  It seems to be the local practice in

5   this district, that once they sign off on the bond, they have

6   essentially agreed not to hypothecate and transfer the

7   property --

8        THE COURT:  I agree.  I just -- in order to pledge the

9   property -- is that all still in that regular paperwork or is

10  there something separate?

11       MR. BELL:  So, Judge, if you look at their bond

12  documents here, there is a check box that, if you order it, it

13  says they may not -- they can't do anything with the property.

14       THE COURT:  They can't do anything with it.  And the

15  reverse of that is the actual pledging of it.  I don't know, is

16  that something different?

17       MR. BELL:  It's the way your colleagues routinely

18  require a defendant or his family to put up, if you will, their

19  property.  And that -- that's the -- that's the instrument that

20  we use here saying that.

21       THE COURT:  So if you've already got the consent of

22  everyone to do that --

23       MR. MITCHELL:  Then I don't need the two weeks.

24       THE COURT:  You probably don't.

25       MR. MITCHELL:  I can get that done on the 22nd as well.

1          THE COURT:  Okay.  Great.  Thank you, Mr. Bell.

2          MR. BELL:  Thank you.

3          THE COURT:  All right.  So then that -- I'm just going

4    to ask you, Mr. Mitchell, to make sure that you talk to

5    Pretrial Services and make sure everybody can see all of

6    that -- you already -- you already have a lot of that written

7    out on your previous bond paperwork; right?

8          MR. MITCHELL:  No.  There is just a personal surety

9    bond that has been signed by proxy by the Court because they

10   actually -- the judge in Brooklyn actually interviewed

11   Mr. and Mrs. Lowe by telephone.

12         THE COURT:  Okay.

13         Okay.  All right.  So, yes, go ahead and make sure,

14   before you leave today, that you make sure Pretrial Services

15   knows what all of this is.

16         Okay.  And is there anything else then with regard to

17   Mr. Lowe?  Do we have an arraignment?

18         MR. MITCHELL:  We can do that now, if you would like.

19         THE COURT:  Go for it.  Are you okay with having them

20   arraigned today?

21         MR. GOEBEL:  I would like to, Your Honor.  And, for the

22   record, the defendants already reviewed the indictment.  So --

23         MR. MITCHELL:  We have.

24         THE COURT:  Go ahead.

25         MR. MITCHELL:  So we're -- we waive the reading of the

1    indictment, Your Honor, enter a plea of not guilty, request

2    trial by jury, and then also request that the standing

3    discovery order be entered.

4         THE COURT:  Okay.  So I will accept your waiver of

5    formal reading, enter a plea of not guilty on all charges in

6    the indictment, note your demand for a jury trial, and will

7    enter the standing discovery order today.

8         After that, all proceedings will be before Judge Scola,

9    and that means, lucky you -- am I paired with Scola right now?

10   I don't know.  I may not be on this one.

11        All right.  Okay.  So all further proceedings for you

12   will be before Judge Scola, and you will have everything done

13   by Tuesday afternoon.

14        MR. MITCHELL:  Thank you, Your Honor.

15        THE COURT:  Okay.  Thank you very much.

16        PRETRIAL SERVICES:  Your Honor --

17        THE COURT:  Yes.

18        PRETRIAL SERVICES:  Good afternoon.  I know that there

19   has been a lot of back and forth with the special conditions,

20   but I would request if they could please be gone over, each

21   one, one by one, just to make sure that I have all of them.

22   Because it needs to be on the record that each one was

23   addressed.

24        THE COURT:  Okay.

25        PRETRIAL SERVICES:  And I have a feeling that some that

1    were --

2            THE COURT:  Yeah, we might have missed some by

3    assumption.

4            PRETRIAL SERVICES:  Yeah.

5            THE COURT:  So I will also -- you know, I think we were

6    saying -- sorry.  I didn't realize we were going to be so long

7    on one of these.  Let me go back to his Pretrial Services

8    report.

9            Okay.  So as to Mr. Lowe, it is a $1 million,

10   10 percent bond, cosigned by Mark and Lynn Lowe who are

11   pledging their residence, and they're agreeing not to mortgage,

12   lien, or hypothecate that residence.

13           MR. MITCHELL:  I'm sorry to interrupt.  But it's

14   actually technically 5 percent because we agreed on $50,000 --

15           THE COURT:  Oh, yes.  Okay.  Bad math.  5 percent bond.

16   It's a good thing you have Mr. Bell there.

17           MR. MITCHELL:  Even I caught that one, Your Honor.

18   Thank you.

19           THE COURT:  Okay.  So a $1 million, 5 percent bond.

20   Mark and Lynn Lowe, L-O-W-E, are the cosigners, and it's their

21   residence.

22           Mr. Lowe is permitted to travel to Mexico with advanced

23   notice and a detailed itinerary in coordination with Pretrial

24   Services.  He is also permitted to travel to the Northern

25   District of California which is where he will reside with

1   his --

2           MR. MITCHELL:  Brother and sister-in-law.

3           THE COURT:  -- brother and sister-in-law.  Is that the

4   Lowes?

5           MR. MITCHELL:  The Lowes.

6           THE COURT:  Okay.  He can also travel to Seattle,

7   Washington, which we believe is the Western District; the

8   Southern District of Florida for this case, and to meet with

9   his counsel, presumably; and the Southern District of New York

10  in the event he needs to appear there for purposes of the

11  securities enforcement action.  If there is any other travel

12  requested, that has to be done through Pretrial Services; it

13  does not have to be approved by the Court unless there is some

14  disagreement with the government.

15          Okay.  He is -- well, we will also include in there

16  that he has to report to Pretrial Services as directed.  He

17  will submit to random home and employment visits.  He will

18  surrender his travel documents other than -- so whenever he is

19  not traveling to Mexico, the travel documents will be in the

20  custody of Pretrial Services.  There was a "submit to random

21  drug testing."  Is that necessary?

22          MR. MITCHELL:  Your Honor, it was from an issue

23  30 years.  I mean, I really don't think it's necessary, but I

24  will defer to the government.

25          THE COURT:  Do you care?  Do you want it in there?

1          MR. GOEBEL:  We would like it in there, Your Honor,

2     just in case --

3          THE COURT:  So what will happen is, if Pretrial

4     Services asks for a sample, they will ask for -- that will be

5     on their discretion.

6          MR. MITCHELL:  That's fine.

7          THE COURT:  Okay.  No contact with co-defendant,

8     meaning Mr. Farnsworth, unless in the presence of counsel, and

9     no contact with any victims, witnesses -- how is that termed?

10    Victims or witnesses?

11         MR. GOEBEL:  Yes, Your Honor.  And we could say "no

12    contact with potential victims or witnesses, the list to be

13    provided" --

14         THE COURT:  With the list you already agreed on.

15         MR. GOEBEL:  -- the government --

16         PRETRIAL SERVICES:  And we need a copy of that list.

17         THE COURT:  We need to give a copy of that list to

18    Pretrial Services.

19         And, finally, Mr. Lowe is prohibited from offering,

20    promoting or selling any securities.

21         MR. MITCHELL:  I think we took out the term "selling"

22    in the language.

23         THE COURT:  Okay.  Offering, promoting any securities.

24         MR. GOEBEL:  That's correct, Your Honor.

25         THE COURT:  There is agreed-upon language that you will

1    give to Pretrial Services but for purposes of the record, it's

2    "offering, promoting any securities other than the sale of

3    Mr. Lowe's securities held in his own name"?

4          MR. MITCHELL:  Correct.

5          THE COURT:  Okay.  What did I miss?

6          You're getting the bond paperwork in by the close of

7    business on Tuesday, November 22nd.

8          Did I miss anything?

9          MR. GOEBEL:  I think that's it, Your Honor.  I guess --

10   and this is just for the record, this wasn't something that you

11   missed.  Our agreement is that the visits to Mexico will be

12   periodic.  So certainly he can visit Mexico, but he is going to

13   reside in -- with his family in the Northern District of

14   California.  He is not going to actually live in Mexico.

15         THE COURT:  Agreed.  Agreed.  That was my intention.

16         MR. MITCHELL:  That was understood.

17         THE COURT:  Okay.

18         MR. MITCHELL:  And I've already told -- but I will tell

19   Pretrial Services.  But I told the government Christmas was

20   certainly a time that and was discussed.  And there is a

21   quinceañera party for his daughter, I believe, in January.  I

22   have alerted the government to those two times in particular.

23         THE COURT:  Okay.  All right.  So that still sounds

24   like something that can be worked out with Pretrial Services.

25   And if it comes to be a problem, the government can raise it

1    with the Court or with Pretrial Services, and if it has to be

2    modified, it has to be modified.

3         So you just, Mr. Lowe, need to be careful not to -- the

4    key here is work with Pretrial Services.  I mean, that's really

5    the key.  If -- if you're not giving the itinerary in time or

6    if you're going places where they don't think you're going and

7    somebody finds out, you may not have any mal-intent, but it

8    doesn't look good.  So that it's always safest to just check

9    with your Pretrial Services officer.

10        You are going to get instructions on that today.  So as

11   soon as you finish with all of the bond paperwork here, you are

12   going to report to Pretrial Services today here, okay?  And

13   that's going to be on the 9th floor of the Ferguson building

14   which, Mr. Mitchell can show you, is across the street.

15   They're going to give you instructions on how to do that.

16        DEFENDANT LOWE:  I understand that, Your Honor.  Thank

17   you.

18        THE COURT:  Okay.  Thank you.  So with regard to

19   Mr. Lowe, is there anything else?

20        MR. GOEBEL:  I think that's it, Your Honor.  Thank you.

21        THE COURT:  Mr. Mitchell?

22        MR. MITCHELL:  That's all I can think of.

23        THE COURT:  Thank you very much.

24        With regard to Mr. Lowe, I'm just going to ask that you

25   stick around and work with Pretrial Services when she is done

1   with our calendar.

2         Mr. Farnsworth, I'm going to hold you on momentarily

3   while I just see what else I have left on the calendar.  What

4   were we doing with Mr. Hipolay (phonetic)?  And -- I'm sorry.

5   I'm just going to ask -- just because these might go a little

6   quicker.

7         MR. COWLEY:  Oh, of course.

8         THE COURT:  You came all the way here, you might as

9   well, you know, hang out.

10        (Other cases called.)

11        THE COURT:  Okay.  Mr. Farnsworth.

12        Okay.  So this is what I want to know.  What -- what

13   companies is Mr. Farnsworth working with now that would involve

14   the -- what was the word we were using -- the offering or

15   promoting of securities as defined in the Securities Act?

16        MR. COWLEY:  So to answer your question, Your Honor,

17   the company that Mr. Farnsworth owns and operates through -- is

18   called Zash, Z-A -- is it -- Z-A-S-H.

19        In terms of the transactions that are pending, here is

20   our -- here is our problem, is they're subject to

21   confidentiality agreements.  I don't want to disclose material,

22   nonpublic information for pending deals.  And so I'm a little

23   bit at a loss as to --

24        THE COURT:  I understand.

25        MR. COWLEY:  Yeah.

```
1              THE COURT:  Okay.  There is Zash.

2              MR. COWLEY:  Uh-huh.

3              THE COURT:  And there is -- what's your position with

4    Zash?

5              DEFENDANT FARNSWORTH:  I was a founder of it.

6              THE COURT:  Okay.  So you're now officer, director,

7    owner --

8              DEFENDANT FARNSWORTH:  Yeah, yeah, and that's a private

9    company at this point.

10             THE COURT:  Okay.  Other than Zash, would you be

11   involved in the promoting -- and when I say "other than Zash,"

12   I understand that you may have some confidential deals, for

13   lack of a better word, going on that may involve affiliated

14   entities.  But other than what is happening with Zash, is there

15   any other promoting -- I keep forgetting the words we're

16   using -- offering, promoting of securities that would come up

17   with any other entities that you're aware of now?

18             DEFENDANT FARNSWORTH:  Well, the company Zash is

19   merging into a public company.

20             THE COURT:  Right.

21             DEFENDANT FARNSWORTH:  But I'm not -- but I'm not doing

22   any promotion of it or anything like that at this time.  I'm

23   not an officer or a director of the public company.

24             THE COURT:  Okay.  So --

25             MR. COWLEY:  If I could -- if I could have a moment, I
```

 1    think we might be talking pat.  Let me talk with him for a

 2    second.

 3              THE COURT:  Okay.  Are you down from DC or New York?

 4              MR. GOEBEL:  From DC, Your Honor.

 5              THE COURT:  Okay.

 6              MR. COWLEY:  So there are -- so there is Zash.  There

 7    is another entity that he has an interest in called

 8    Icon Publishing.  And those are -- those are two entities

 9    that -- that, you know, have ongoing transactions.  And, again,

10    the -- I mean, to be clear, the way that this proposed

11    condition can implicate these -- you know, his work,

12    it's -- it's not -- it involves -- it could involve raising

13    money, like through debt, through equity, all of these things.

14              THE COURT:  I am totally following you.

15              MR. COWLEY:  Yes, okay.

16              THE COURT:  So this is what I'm inclined to do.  I am

17    inclined to keep the -- I'm inclined to split the baby here,

18    basically.  I'm going to do a compromise which is, based on the

19    nature of the charges, I understand the government's concern

20    with Mr. -- I'm sorry -- with Mr. Lowe -- no, Mr. Farnsworth.

21    Yes, sorry.  It's a long afternoon.  With Mr. Farnsworth being

22    involved in offers or promoting.  But it was a while ago.  So I

23    do -- you know, I am persuaded by the defense's argument that

24    there has been no allegation, at least in the record, of

25    engaging in any sort of conduct that is implicated in the,

1    either, securities enforcement action or in the criminal case

2    before this court in the last three years approximately.

3          So I don't -- I don't want to enter a bond that makes

4    it impossible for Mr. Farnsworth to work or engage in the work

5    that he has been doing that, like I said, doesn't appear to

6    have implicated any of the securities regulations or the fraud

7    regulations that are at issue here.  So -- but I understand the

8    concern.

9          So what I'm going to do is -- we're going to include as

10   a condition that Mr. Farnsworth is not to be involved in the

11   offering or promoting of securities other than any offering or

12   promoting or similar conduct involving -- is it Zash Inc.?

13   Zash?  What is it?

14         DEFENDANT FARNSWORTH:  Zash Global Inc.

15         THE COURT:  Global.

16         DEFENDANT FARNSWORTH:  And Vinco Ventures.  That's the

17   public company it's going into.

18         THE COURT:  Say it again.

19         DEFENDANT FARNSWORTH:  Vinco Ventures.

20         THE COURT:  V-I-N-C-O?

21         DEFENDANT FARNSWORTH:  Yes.

22         THE COURT:  Okay.  So other than work that he is

23   already currently involved in, he may continue the -- to the

24   extent that involves offering and promoting in connection with

25   Zash Global, Vinco Ventures, and transactions related -- and, I

1    guess, Icon Publishing --

2         MR. COWLEY:  Yes, Your Honor.  Thank you.  I was going

3    to raise that as well.

4         THE COURT:  These entities appear to be activities that

5    are ongoing.  So I'm not going to stop him from engaging in

6    what's already ongoing.  So any -- any actions that may

7    implicate that kind of conduct related to transactions

8    involving these three identified entities, I'm going to permit

9    him to continue.  It's kind of like Mr. Lowe and being able to

10   sell his own personal securities.  You know, we're going to

11   carve something out because I don't want to prevent either of

12   these individuals from having access to employment and being

13   able to, you know, make money the way they make money.  Because

14   I don't have any reason, I don't see any kind of asset freeze,

15   I don't see any kind of injunction, you know, in place.  So I

16   don't think there is a basis for me to stop that either.

17        So that's going to be my ruling on that particular part

18   of the bond, and I do know that we're going to go through all

19   of it --

20        MR. COWLEY:  Your Honor --

21        THE COURT:  Yes.

22        MR. COWLEY:  -- if I may, just to add one -- and to be

23   consistent with Your Honor's ruling -- just one more bit of

24   language, out of an abundance of caution, relating to those

25   companies, I would say, or any other transactions presently

1    pending, just to -- just to make sure we're sort of covering

2    belt and suspenders on that.

3           THE COURT:  Right.  I thought that's what I said.

4    Presently pending transactions or ongoing transactions

5    involving Zash Global, Vinco Ventures, Icon Publishing, and

6    affiliates.  I mean, I understand there is going to be subs,

7    there is going to be --

8           MR. COWLEY:  Right.  I guess my request would be,

9    you know, including but not limited to transactions involving

10   those companies.  If that --

11          THE COURT:  I don't know about "limited to."  It's

12   limited to transactions that are in furtherance of --

13          MR. COWLEY:  Relating to those companies?

14          MR. GOEBEL:  I think -- I mean, if defense counsel is

15   that concerned about the specific language, we can limit it to

16   these specific companies for now, and then he could provide a

17   list to Pretrial of all the different subsidiaries and related

18   companies --

19          THE COURT:  And then that is really hard for Pretrial

20   to oversee.  I think this is going to be -- if the

21   government -- and I will -- and I will give the admonition,

22   you know, that -- if the government -- you have got to know,

23   Mr. Farnsworth that -- and Mr. Cowley, if the government gets a

24   whiff that there is some sort of, you know, promoting, dealing,

25   you know, work with some other venture that is not associated,

1    that you're not going to have a really strong argument that it

2    has something to do with these entities that we're talking

3    about and what is already ongoing, they're going to be back

4    here so fast trying to revoke that bond.

5         So, again, as I always say, better safe than sorry.  If

6    you think that you're involved in -- even if it's, you know,

7    trying to raise capital for some other venture that you're not

8    sure what the government's going to think, I'm going to tell

9    you right now, I would have Mr. Cowley clear it with them,

10   because they're going to be watching very carefully, as is the

11   SEC.

12        So, I mean, it's -- I'm not going to put the onus on

13   Pretrial Services to try and monitor that.  It's just not -- I

14   don't think that that's something I'm going to make them do.

15   I'm going to have -- we're going to write the restriction into

16   the -- into the conditions of bond.  And I have no doubt that

17   the SEC and the Department of Justice will be watching very

18   carefully.  I think it's going to be monitored without Pretrial

19   Services.  Okay?  Understood?

20        DEFENDANT FARNSWORTH:  Understood, Your Honor.

21        THE COURT:  Okay?

22        MR. GOEBEL:  Correct, Your Honor.  Understood.

23        THE COURT:  All right.  That was it.  That's the only

24   thing we had tabled; right?

25        MR. COWLEY:  That's the only thing in dispute,

 1    Your Honor.

 2            THE COURT:  Okay.  So we are going to go -- before we

 3    arraign -- which I'm assuming you are ready to arraign today.

 4            MR. COWLEY:  Correct, Your Honor.

 5            THE COURT:  Let's go through the bond conditions really

 6    quick, really quick.

 7            All right.  Mr. Farnsworth.

 8            So it is a -- I think I wrote -- I had a cosigner --

 9    okay, here.

10            So as to Mr. Farnsworth, it is a $1 million personal

11    surety bond to be cosigned by Roderick Vanderbilt who is

12    pledging his property that's worth, give or take, somewhere in

13    the neighborhood of $1 million.  What was that?  His home?

14            MR. COWLEY:  Correct.  It's a condo here in Miami,

15    Your Honor.

16            THE COURT:  Okay.  Not his homestead?  Well, it's not

17    like a corporate surety bond.  I mean, you can pledge it.

18            MR. COWLEY:  Okay.

19            THE COURT:  Okay.  So it's a $1 million personal surety

20    bond cosigned by Roderick Vanderbilt who is pledging a condo

21    which he can identify for the bond paperwork.  He is going to

22    be ordered not to pledge, hypothecate, mortgage, or otherwise

23    lien that property.

24            The travel -- he will be supervised -- he will be under

25    the supervision of the Southern District of Florida but there

1    will be a supervising Pretrial Services officer in the Northern

2    District of New York, if possible preferably in the Syracuse

3    area.  Travel will be -- he will be residing in the Northern

4    District of New York, in the Syracuse -- is it Syracuse?

5           MR. COWLEY:  Correct, Your Honor.

6           THE COURT:  With travel permitted to Southern District

7    of Florida, Southern District of New York, and the District of

8    Columbia for purposes of the ongoing cases and counsel and

9    additional travel as approved by Pretrial Services?

10          MR. COWLEY:  Correct, Your Honor.

11          THE COURT:  Okay.  So we are going to leave it at the

12   discretion of Pretrial Services, if he is going to go somewhere

13   that's not within one of those districts.

14          PRETRIAL SERVICES:  Correct.  So additional travel

15   within the United States.

16          THE COURT:  Correct.

17          MR. COWLEY:  Correct.

18          THE COURT:  This one is not leaving the United States.

19          MR. GOEBEL:  He will be surrendering his passport.

20          THE COURT:  Surrendering -- you're not going to your

21   former's partner's daughter's quinceañera in Mexico apparently.

22          Do you have a passport?

23          DEFENDANT FARNSWORTH:  I surrendered it.

24          MR. COWLEY:  I have it in my, possession Your Honor.

25          THE COURT:  Okay.  So that has to be surrendered to the

1    Pretrial Services?

2              MR. COWLEY:  Yes.

3              THE COURT:  And then I already indicated no firearms in

4    the residence or on your possession.

5              And -- to report to Pretrial Services as directed.

6              No contact with victims or witnesses.  There is a list

7    to be provided by the government of all the names, and that can

8    be included in the Pretrial Services paperwork.

9              Surrender passport.

10             What did I miss?

11             MR. GOEBEL:  I think that's it, Your Honor.

12             PRETRIAL SERVICES:  I have a question.  I know in the

13   other case it was victims, witnesses, and co-defendants.  Does

14   this one include co-defendants as well?

15             THE COURT:  Who are the co-defendants?  Is it just --

16             MR. COWLEY:  Just Mr. Lowe.

17             THE COURT:  -- just the two?

18             MR. COWLEY:  Yes.

19             THE COURT:  So no -- it was no contact with the

20   codefendant, absent the presence of counsel.  That's how I did

21   it for victims.

22             MR. COWLEY:  We are agreeable to that.

23             THE COURT:  Okay.

24             PRETRIAL SERVICES:  It's just -- it's two separate

25   conditions on our bond papers.

1              THE COURT:  Yes, no contact with codefendants.  Can you

2      put in there "unless they're with their lawyers"?  Because,

3      yeah, it makes sense --

4              PRETRIAL SERVICES:  Except through counsel.  It is

5      noted.

6              THE COURT:  Okay.  All right.  So same with -- as with

7      Mr. Lowe, please make sure to go through the paperwork with

8      Pretrial Services before you leave here.

9              MR. COWLEY:  Yes, Your Honor.

10             THE COURT:  We are making her work overtime.

11             MR. COWLEY:  Understood, Your Honor.

12             And I think you already said this earlier, but that we

13     have until next Tuesday, the 22nd, for the completion and

14     execution of all paperwork.

15             THE COURT:  Yes.  Tuesday, close of business.  Okay?

16             MR. COWLEY:  Okay.

17             THE COURT:  You are still going to report immediately

18     today to Pretrial Services.  You're going to go through all of

19     this, but still, even after this, you're going to go to the

20     Pretrial Services office, across the street at the Ferguson

21     building, which is on the 9th floor, and you're going to get

22     your instructions.  Because she's not your Pretrial Services

23     officer.  So you're going to get your instructions on how to

24     report to Pretrial Services and --

25             PRETRIAL SERVICES:  In the other district, yeah.

1           THE COURT:  Right.  They are going to help you with

2     figuring out how to do the reporting with the other district.

3     So it's 4:00.  They will --

4           PRETRIAL SERVICES:  Yes.

5           THE COURT:  Do they have -- have they been processed by

6     the marshals?

7           PRETRIAL SERVICES:  No.  He Came straight to the

8     courthouse.  He surrendered, but not really.

9           MR. COWLEY:  Your Honor, if I could, he was -- he was

10    processed by marshals and FBI in DC when he made his initial

11    appearance.

12          THE COURT:  So he got printed and all that stuff?

13          MR. COWLEY:  Printed, all that.  So --

14          MR. GOEBEL:  That's correct, Your Honor.  He had been

15    given the marshals registration number, and it was just like an

16    out of-district-arrest where -- but he self-surrendered.

17          THE COURT:  Does he still have to go through the

18    marshals today?  Yes?

19          MR. GOEBEL:  Yes.

20          THE COURT:  Okay.  So where does he -- do they go --

21    but outside.  They don't go with you?

22          SECURITY OFFICER:  No, ma'am.  He is not in custody.

23          THE COURT:  Okay.

24          SECURITY OFFICER:  So he will walk across the way

25    and enter the 400 --

1          THE COURT:  Okay.

2          SECURITY OFFICER:  Ferguson building.

3          THE COURT:  So even though you already got -- both of

4     you already got an FBI number and a marshals number, you're

5     still going to go to the 6th floor first, and your attorneys

6     can walk you through this.

7          Get -- make sure that they have everything they need

8     here, and then you will go to the 9th floor.  We've got to get

9     you to the 9th floor by 5:00 so you can report to Pretrial

10    Services.  So --

11         PRETRIAL SERVICES:  Since they have been out on bond,

12    they could just call the officer on their form.  That's the one

13    who is going to have the -- by the time you guys get out --

14         THE COURT:  Okay.  So then I will let you give them

15    those instructions.

16         I want to arraign Mr. Farnsworth.  Right?  I arraigned

17    Mr. Lowe.

18         Okay.  So let's arraign Mr. Farnsworth so we get that

19    done too.

20         MR. COWLEY:  Thank you, Your Honor.

21         Yes.  We -- on behalf of Mr. Farnsworth, we waive

22    reading of the indictment.  We enter a plea of not guilty.  We

23    request a jury trial.  And we request entry of the Court's

24    standard discovery order.

25         THE COURT:  Okay.  So I will accept your waiver of

1    formal reading.  I will enter a plea of not guilty as to all

2    charges in the indictment.  We will note your demand for a jury

3    trial.  And we will enter the standing discovery order here.

4          And that should be it.  Or, no?  I see you -- no.

5          MR. GOEBEL:  We're good, Your Honor.  Thank you.  We

6    appreciate the Court's time today.

7          THE COURT:  You know what?  I was not -- did not know

8    what I was walking into this afternoon.  Thank God I ate lunch.

9          Well, it was a pleasure.  Thank you, all.  I always

10   appreciate having such solid lawyers in front of me.

11         (These proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

               I hereby certify that the foregoing is an
 4
      accurate transcription of the proceedings in the
 5
      above-entitled matter.
 6

 7

 8   DATE:  08-03-2023         /s/Laura Melton
                               LAURA E. MELTON, RMR, CRR
 9                             Official Court Reporter
                               United States District Court
10                             Southern District of Florida
                               400 North Miami Avenue
11                             Miami, Florida 33128

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```