```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 22-CR-20521-RNS-1

UNITED STATES OF AMERICA
                                               Miami, Florida

        vs.                                    September 1, 2023

                                               10:00 a.m. - 10:16 a.m.
THEODORE FARNSWORTH,

                      Defendant(s).      Pages 1 - 13
    ------------------------------------------------------------

                         STATUS CONFERENCE VIA ZOOM
                  BEFORE THE HONORABLE ROBERT N. SCOLA
                         UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT(S):   MATTHEW REILLY
                         U.S. Department of Justice,
                         Criminal Division
                         Fraud Section
                         1400 New York Ave. NW
                         Washington, DC 20005
                         matthew.reilly2@usdoj.gov

FOR THE DEFENDANT(S):    JASON H. COWLEY
                         McGuire Woods LLP
                         1251 6th Avenue, 20th Floor
                         New York, NY 10020
                         jcowley@mcguirewoods.com

                         HENRY BELL
                         Bell Rosquete Reyes, PLLC
                         999 Ponce De Leon Blvd., Suite 1120
                         Coral Gables, FL 33134
                         hbell@brresq.com

REPORTED BY:             JILL M. WELLS, RMR, CRR, CSR
                         Official Court Reporter
                         400 N. Miami Avenue
                         Miami, FL 33128
                         jill_wells@flsd.uscourts.gov
```

```
 1    (Case called to order of the court at 10:00 a.m.)
 2              THE COURT:  We are here for
 3    United States v. Farnsworth.
 4              Who is here for the government?
 5              MR. REILLY:  Matt Reilly, for the United States.
 6              Good morning, your Honor.
 7              THE COURT:  Anybody else for the government?
 8              MR. REILLY:  Not today, your Honor.
 9              THE COURT:  Are you in a prison cell?
10              MR. REILLY:  Just my basement, Judge.
11              THE COURT:  Your what?
12              MR. REILLY:  My basement, at home.
13              THE COURT:  Okay.
14              Who is here for the defendant?
15              MR. COWLEY:  Good morning.
16              Jason Cowley, on behalf of Mr. Farnsworth.
17              THE COURT:  Good morning.
18              MR. BELL:  Henry Bell, along with Mr. Cowley, on
19    behalf of Mr. Farnsworth.
20              THE COURT:  Good morning.
21              So this is set for a status to discuss how we are
22    going to proceed next week with the motion.
23              According to the email I received, it seems like both
24    sides are in agreement that I can accept into evidence any
25    exhibits that are attached to all of the motions, responses,
```

1  and replies except for the FBI 302s and except for the
2  probation officer's reports.
3             Is that correct?
4             MR. REILLY:  Yes, your Honor.
5             MR. COWLEY:  We agree, your Honor, yes.
6             THE COURT:  So I think the one major matter that's in
7  disagreement is whether the probation officer and/or an agent
8  are going to testify by Zoom or live.
9             So who wants to present them by Zoom?  Give me some
10 legal authority that says I can do that when my decision isn't
11 going to be, you win, that he is going to stay in jail for 14
12 months waiting for trial.
13            MR. REILLY:  Your Honor, the government is not aware
14 of any authority prior regarding testimony.  There is the
15 statute --
16            THE COURT REPORTER:  Could you speak into your
17 microphone?
18            MR. REILLY:  Your Honor, the government begins from
19 the premise of, there is no requirement that the witnesses
20 appear live and in court for the hearing.  The statute simply
21 requires that the court hold a hearing without prescribing that
22 there's any necessity that the witnesses be there in person.
23            This is not a trial where constitutional rights for
24 confrontation of live witnesses would apply.  The government
25 does not have currently any cases to cite for that proposition.

1   But should the court want, we certainly can get everything
2   citing case law in the district and the circuit by the end of
3   the day today.
4               THE COURT:  And other than the inconvenience of this
5   person not wanting to come, what's the reason you want to
6   present the testimony by Zoom?
7               MR. REILLY:  Well, your Honor, in speaking with the
8   probation officer in Syracuse, we understand that it would be a
9   burden on his office to have one of the probation officers
10  travel for two days, be unable to directly supervise his own
11  defendants, will need other officers in his office to cover for
12  him.
13              And given the headache that Mr. Farnsworth has already
14  caused of the probation office in Syracuse, for the very
15  reasons that led to the original violation report in this
16  matter, in the absence of a need for him to be in person, the
17  court -- or the government thinks that it would be -- it would
18  cause no prejudice to Mr. Farnsworth, it would allow for a more
19  efficient proceeding, and it would avoid further disruption of
20  the probation office to allow this witness to appear via Zoom,
21  be subject to cross-examination via Zoom, and have his
22  testimony presented to the court that way.
23              Of course, your Honor, if the court requires the
24  probation officer there, the government will have him there.
25              THE COURT:  Isn't one of the main allegations in your

1  motion that he lied to his probation officer orally, and
2  Mr. Farnsworth is denying that?
3  So isn't the credibility of Mr. Farnsworth versus the
4  probation officer critical for my determination of whether to
5  revoke his bond, at least on that issue?
6  MR. REILLY: Certainly, your Honor. And I don't
7  believe that, you know, the probation officer appearing on
8  camera via Zoom would prevent the court from making an
9  assessment about the officer's credibility.
10  And certainly counsel for Mr. Farnsworth would have
11  their opportunity to cross-examine, test the recollection of
12  the officer in that manner, and would allow for, kind of, a
13  full development of the record with the witness via Zoom. That
14  would still allow the court to assess the credibility of the
15  probation officer proceeding in that fashion.
16  THE COURT: Okay. Thank you.
17  What is the defense position as to the live versus
18  Zoom testimony?
19  MR. REILLY: Your Honor, Jason Cowley speaking for
20  Mr. Farnsworth.
21  Clearly, the court already has an understanding of
22  Mr. Farnsworth's position and the importance of live testimony
23  with respect to Officer Christopher.
24  As you pointed out, certain of the government's key
25  allegations are premised on conversations and interactions

1      between Officer Christopher and Mr. Farnsworth, and
2      Mr. Farnsworth's liberty for the next over a year period is on
3      the line here.
4              You know, while I am not aware of a rule requiring
5      live testimony, it's our position that in order to fully have
6      the ability to cross-examine the officer, to have the ability
7      to fully explore the conversations and relevant exchanges
8      between the two, that live testimony, both in terms of our
9      ability to probe and test the witness and your Honor's ability
10     to evaluate the witnesses' credibility, that's just going to be
11     a much better means of doing that live as opposed to somehow
12     telephonic or Zoom.
13             So that's the foundational premise as to why we think,
14     given how much is on the line and given how central Officer
15     Christopher's testimony is to the government's allegations,
16     that we be afforded the opportunity to examine him live in
17     front of your Honor.
18             THE COURT:  So let me just say, that since COVID, I
19     have had a number of hearings and civil trials by Zoom, and my
20     personal opinion is that I can -- I believe that I have a
21     better view of the witness and the proceedings by Zoom than
22     live.  When somebody is live in the courtroom, they are sitting
23     over to my right.  I see the side of their face when they are
24     answering questions.  On Zoom, I can see a straight view of
25     them.  I can also see everybody else.

1               When somebody is testifying in a nonjury trial, my
2    focus is on the witness.  I am taking notes.  There could be
3    bombs going off in the gallery and I wouldn't even know it.
4    But on Zoom, I can see everybody.  And even though it looks
5    like you are 2 inches by 2 inches on the screen, think about
6    it, if you put your hands up like this, and a witness is 12
7    feet away, that's pretty much how big they are in your field of
8    vision anyway.
9               So I am a big proponent of Zoom testimony.  I don't
10   believe there's any infirmity in hearing testimony by Zoom
11   versus live.
12              That's Bob Scola.  Okay?  I am not willing to create
13   new case law on whether in a criminal case or a critical matter
14   like this a Zoom hearing is sufficient.
15              So I am going to require that the witness testify live
16   if the government is going to go forward with the allegations
17   relating to statements or instructions that were -- any
18   statements by Mr. Farnsworth to the probation officer that are
19   in dispute or any instructions from the probation officer to
20   Mr. Farnsworth that are in dispute.
21              MR. BELL:  Understood.
22              THE COURT:  And what's the FBI agent going to testify
23   about?
24              MR. REILLY:  He's going to testify about interactions
25   and questions answered by an individual named Mateo May who --

1  there are allegations in our briefing about Mr. May's
2  statements that are probative of Mr. Farnsworth's violation of
3  New York state law.
4          THE COURT:  So he can appear by Zoom.
5          Where is he?  Is he in New York?
6          MR. REILLY:  He was going to come.  The FBI was
7  planning to travel down, your Honor.
8          THE COURT:  Okay.  There is something about that
9  whole -- not the whole thing, but part of that is, you were
10 saying that Mr. Farnsworth acknowledged that Mr. May had
11 committed bank fraud because he listed his employment as
12 Fortress because Mr. Farnsworth was making payments to Mr. May,
13 or things for Mr. May, through that company.  So, therefore,
14 when Mr. Farnsworth made payments, then he's committing bank
15 fraud.
16         I don't understand how his making payments of his
17 money is bank fraud.  It may be tax fraud.  If he claims that
18 those are business expenses, and then he doesn't, at the end of
19 the year, say, okay, those are my personal expenses.  But a tax
20 return, lying about those, I don't know of any crime to make
21 personal expenses through your business.
22         MR. REILLY:  Your Honor, the fraud for those charges,
23 for that conduct, comes in through on the wires that
24 Mr. Farnsworth sent from the Fortress account to Mr. May.  He
25 put a variety of fraudulent purposes for the wire transfer.  So

1 | he listed it as for --

2 | THE COURT: But is it his money? Is it his money?

3 | MR. REILLY: It's his corporation's money.

4 | THE COURT: Okay. So who is the victim of the wire
5 | fraud? Not the bank.

6 | If you tell the bank, hey, transfer $1,000 to my son
7 | to buy a new car, and the bank transferred $1,000 to your son,
8 | and it is not to buy a new car, it's to go on vacation, how is
9 | he defrauding the bank? It's your money. You are telling them
10 | to send it him.

11 | MR. REILLY: Your Honor, as an initial matter, we did
12 | not -- that discussion occurred in our reply brief, and I do
13 | not believe we structured it as a stand-alone violation but in
14 | order to further demonstrate Mr. Farnsworth's inability to
15 | comply with providing truthful information to probation in that
16 | he accused Mr. Farnsworth -- excuse me, he accused Mr. May of
17 | committing bank fraud for falsely stating to the bank where he
18 | was employed, and then engaged himself in similar conduct that
19 | he believes would be bank fraud, based on his statements to
20 | Mr. May, in providing false purposes in the wire transfers he
21 | made from Fortress to Mr. May.

22 | So I apologize --

23 | THE COURT: So you are not going to bring that up at
24 | the hearing?

25 | MR. REILLY: Well, I think other than the point that

1  Mr. Farnsworth is engaging in conduct that he described similar
2  conduct to what he told another person was bank fraud in
3  furtherance of our argument that he is incapable of complying
4  with any conditions of release.
5          THE COURT:  Okay.  All right.  So what else are we
6  taking up this morning in anticipation of this hearing?  The
7  probation officer has to testify live.
8          What's the next issue, if any?
9          MR. BELL:  Judge, just to be clear -- I'm sorry, I
10 don't mean to interrupt -- but what's your ruling, if any, on
11 whether the --
12         THE COURT:  You just froze.
13         MR. REILLY:  He did freeze.
14         THE COURT:  After you said what's your ruling, you
15 froze.  I didn't hear anything else.
16         MR. BELL:  I apologize.  Can you hear me now?
17         THE COURT:  Yes.
18         MR. BELL:  I'm sorry about that.  Maybe our Internet
19 connection is not the best, but, again, I apologize.
20         I was just saying, Judge, I was asking, what's your
21 ruling, if any, on whether the FBI agent has to appear in
22 person?  Apparently the agent is going -- his entire testimony
23 will be hearsay.
24         THE COURT:  I thought he was going to be here.
25         MR. BELL:  He is going to be in person then?

```
 1                THE COURT:  That's what Mr. Reilly said.
 2                MR. BELL:  Okay, I apologize.  I misunderstood him.
 3                THE COURT:  Is that right, Mr. Reilly?
 4                MR. REILLY:  Yes, the agent will be there.
 5                MR. BELL:  Then I misunderstood.  I'm sorry about
 6    that.
 7                MR. COWLEY:  Your Honor, if I may.
 8                Additionally on that, as Mr. Bell just noted, the FBI
 9    agent's recounting of what Mr. May told the FBI agent is
10    hearsay.  We don't contest that hearsay is allowed in these
11    proceedings.
12                It would our preference, if Mr. May is available to
13    testify, that the government call him directly, you know, for
14    all the reasons we discussed in terms of the importance of the
15    ability to test that witness's credibility and knowledge, et
16    cetera.
17                I don't know if the government has the ability or, you
18    know, is willing to make Mr. May directly available as opposed
19    to relying on the FBI agent's hearsay testimony, but I did want
20    to raise that as well.
21                THE COURT:  Let me see if I can shorten everybody's
22    attention span on these issues.  Okay?
23                I revoked his bond because of his lies to the
24    probation officer, allegedly, okay, and his travels, why he
25    went to certain places, and what he told his probation officer.
```

1            All this other stuff that came out about his gay
2   lovers or gay, you know, paid escorts, or things like that, if
3   that -- if somebody said I want you to revoke his bond because
4   he is paying for escorts, I would not have revoked his bond.  I
5   don't know what I would have done.  I don't think I would have
6   ignored it, but I wouldn't have revoked his bond.
7            So I think you all need to focus on what he told his
8   probation officer.  Because if he lied to his probation officer
9   about material matters relating to where he was, why he was at
10  those places, all of that other stuff is not going to matter.
11           If he didn't lie to him about all of those things,
12  those things are probably not going to matter either.  So I
13  think everybody should be focused on that issue.
14           MR. BELL:  Understood, Judge.
15           MR. COWLEY:  Thank you, your Honor.
16           MR. BELL:  Nothing else on our side.
17           THE COURT:  Okay.  So we will see you all next week.
18  Have a great --
19           Are you in Charlotte, Mr. Cowley?  Is that why it says
20  Charlotte?
21           MR. COWLEY:  Yes.
22           THE COURT:  I apologize.  I was just about to get on a
23  plane to go to Charlotte for a wedding.
24           MR. COWLEY:  The weather is lovely right here right
25  now.

```
 1              THE COURT:  I saw that.
 2              Thank you for making those arrangements.  We will see
 3   everybody next week.
 4              (Proceedings adjourned at 10:16 a.m.)
 5
 6                        C E R T I F I C A T E
 7
 8       I hereby certify that the foregoing is an accurate
 9   transcription of the proceedings in the above-entitled matter.
10
11   September 26, 2023      /s/ Jill M. Wells
                             Jill M. Wells, RMR, CRR, CSR
12                           Federal Official Court Reporter
                             400 N. Miami Avenue
13                           Miami, FL 33128
                             jill_wells@flsd.uscourts.gov
14
15
16
17
18
19
20
21
22
23
24
25
```