UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20521-RNS-1

**SEALED**

UNITED STATES OF AMERICA

v.                                          UNDER SEAL

THEODORE FARNSWORTH,

   Defendant.
_____/



FILED BY _____ D.C.

AUG 08 2023

ANGELA E. NOBLE
CLERK U.S. DIST CT
S.D. OF FLA. - MIAMI

## GOVERNMENT'S MOTION TO REVOKE THE PRE-TRIAL RELEASE OF DEFENDANT THEODORE FARNSWORTH

The defendant, Theodore Farnsworth, cannot be trusted by the Court to remain on pretrial release. After approximately nine months, he has failed to adjust to supervision. The defendant has repeatedly violated his conditions and committed new crimes. The nature of his violative conduct compels a finding that the defendant is unlikely to abide by any condition of release. Among other things, the defendant: (i) failed to notify his Probation Officer about contact with law enforcement; (ii) lied to his Probation Officer about the fact that he had reported contact with law enforcement when, in truth, he had not; (iii) failed to seek approval before traveling from the Northern District of New York to the Southern District of Florida; (iv) failed to provide information about this trip as requested by his Probation Officer; (v) knowingly made false statements in a sworn affidavit he submitted to law enforcement in violation of Section 210.45 of the Penal Law of the State of New York; and (vi) patronized an escort in violation of Section 230.04 of the Penal Law of the State of New York. This and other behavior relating to an order entered by the Federal Trade Commission ("FTC"), as part of a settlement of a fraud case against him, overwhelmingly support the inference that the defendant has a deep disrespect and disregard

for the law and has engaged in a course of conduct designed to evade the reporting requirements necessary for Probation to successfully supervise him. Because the defendant's violative conduct cannot be remedied by imposing new conditions, the government respectfully urges the Court to revoke his bond and order him detained pending trial.

## BACKGROUND

*The Defendant Is Charged with Committing a Serious Fraud*

The defendant – who was the Chief Executive Officer and Chairman of a publicly traded company – played a leading role in an enormous fraud by repeatedly lying to investors about his company's core business and operations. (*See generally* ECF 3.) He knowingly promoted product offerings, technologies and capabilities that his company did not have, serially making false and misleading statements in press releases, print and televised interviews. And when he succeeded in manipulating the company's stock price and attracting new investors, the defendant used corporate money to fund his lavish lifestyle. The defendant has been charged with one count of securities fraud and three counts of wire fraud.

The defendant abandoned his post shortly before the company petitioned for bankruptcy. The defendant was later sued by:

- the subsequently appointed bankruptcy trustee for breaching his fiduciary duties by engaging in "reckless and self-indulgent spending" while the company suffered "massive losses";
- the FTC for engaging in deceptive marketing a subscription service and then deploying deceptive tactics aimed at preventing subscribers from using the service as advertised; and

- the U.S. Securities and Exchange Commission ("SEC") for securities fraud.[1]

*The Court Released the Defendant Subject to Certain Conditions*

The defendant was indicted in this case on November 2, 2022, and on November 17, 2022, he was arraigned in this District. The defendant's bond was set at $1,000,000.00 personal surety, and he was released with the following conditions, among others:

- "Must not violate any federal, state or local law while on release in this case."

  "Should the defendant come in contact with law enforcement, he shall notify the U.S. Probation Officer within 72 hours."

- "The defendant may travel to the Southern District Florida, the Northern District of New York, the Southern District of New York for purposes of conducting business, and the District of Columbia metropolitan area for purposes of meeting with counsel. He is also authorized to travel as needed to go between these districts."

- "The defendant may travel throughout the United States as authorized by Pretrial Services in advance of any such travel, but without further leave of Court."

- "Report to Pretrial Services as directed."

(ECF 13.) The defendant signed his bond and expressly acknowledged that he had carefully read and understood his bond, knew he was obligated by law to comply with all of the terms of his bond, and was aware of the sanctions outlined in his bond for violations of the bond (which include revocation of release and entry of an order of detention pursuant to 18 U.S.C. § 3148). (*Id.* at 6.)

*The Defendant Failed to Report Contact With Law Enforcement in Violation of His Conditions – and Then Lied About It to His Probation Officer*

Beginning on or around May 5, 2023, the defendant had contact with local law enforcement arising from several domestic disputes with an individual named ███ ███ (Exhibits 1, 2.)

---

[1] *See generally In re HMNY*, Case No. 20-10242-smb, Adv. Proc. No. 20-1182-smb (filed June 5, 2020) (S.D. N.Y. Bankr.) (ECF 91); *In re HMNY*, Case No. 20-10242-smb, Adv. Proc. No. 20-1182-smb (filed June 5, 2020) (S.D. N.Y. Bankr.) (ECF 111); *S.E.C. v. Farnsworth, et al.*, Case No. 22-cv-8226-KPF (filed Sept. 26, 2022) (S.D. N.Y.).

███ advertised his services on hot.com where he said he was looking for "higher end clients". (Ex. 3.) According to ███ he initially met the defendant through his work in or around 2019. (Ex. 5 at 1.) ███ and the defendant later dated for several years and lived together in Baldwinsville, New York. (Ex. 1 at 3; Ex. 5 at 1.) From April 28, 2021 through and including May 1, 2023, the defendant regularly sent ███ anywhere from $3,000 to $14,000 per month from a Pathfinder Bank Account ending 1216, which was a corporate bank account in the name of Fortress Entertainment Group Inc. ("Fortress"). (*See* Attachment A – Payments to ███ ███ Ex. 4.) The defendant marketed Fortress as a film production company that was a successor to the MoviePass film business. (*See, e.g.*, Fortress Press Release, "Ted Farnsworth, Former MoviePass Chairman, Inks 3 Motion Pictures Deal: Fortress Entertainment Group and Damascus Road Productions Join Forces to Produce Wholesome Entertainment," Apr. 29, 2020, available at https://www.prnewswire.com/news-releases/ted-farnsworth-former-moviepass-chairman-inks-3-motion-pictures-deal-301049266.html.) The documentation supporting the wire transfers stated that the payments were for "Production Services PA", "QA Services", "App Consulting", and "Consulting". (*See* Attachment A; Ex. 4.) Federal law enforcement, however, confirmed that ███ had never worked for Fortress and he had no idea what Fortress was. (Ex. 5 at 3.) The defendant sent ███ a total of approximately $146,700 from the Fortress corporate bank account.[2] (*See* Attachment A; Ex. 4.) Additionally, on or around September 20, 2021, the defendant purchased a 2021 Cadillac Escalade for $144,483, using funds from the Fortress corporate bank account. (Ex. 6.) The title and registration for the 2021 Cadillac Escalade were put in the name of ███ who understood the vehicle was a gift. (Exs. 2, 7, 8, 9.)

---

[2] The last wire transfer the defendant sent to ███ was on May 1, 2023, four days before the defendant filed a complaint against ███ with law enforcement.

On or around May 5, 2023, the defendant signed an affidavit, under oath, initiating a complaint against ▊ with local law enforcement. (Ex. 1 at 12-13.) The defendant signed the affidavit, which stated: "I have read this 2 page affidavit and swear that it is the truth to the best of my knowledge and recollection. I know the meaning of perjury; it is telling of a lie while under oath and I know that false statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York." (*Id.*) In the affidavit, the defendant accused ▊ of hitting and choking him. (*Id.*) He also accused ▊ of stealing his 2021 Cadillac Escalade. (*Id.*) This latter statement, which the defendant made under oath, was false and misleading. The title and registration for the 2021 Cadillac Escalade are in the name of ▊ (Exs. 7, 8, 9.) Accordingly, while local law enforcement charged ▊ with and arrested him for other crimes, they declined to charge ▊ with the theft of the 2021 Cadillac Escalade.

On or around May 17, 2023, ▊ signed a voluntary affidavit, under oath, initiating a complaint against the defendant with local law enforcement. (Ex. 2 at 4.) The complaint was based on events that took place on May 16, 2023, when the defendant allegedly confronted and had a physical altercation with ▊ (*Id.*) On May 18, 2023, ▊ obtained a Temporary Order of Protection against the defendant. (*Id.* at 9-17) Local law enforcement made "numerous attempts" to contact the defendant to investigate ▊ allegations, but were unsuccessful. (*Id.* at 3, 6.)

After the government learned about and shared with the Probation Office information concerning the defendant's contact with law enforcement, the defendant's Probation Officer questioned the defendant about his failure to notify the Probation Office. (*See* Violation Memorandum dated July 28, 2023 ("Vio. Memo.") at 2.) The defendant falsely responded that he had reported his contact with law enforcement to the Probation Office. The Probation Officer

conducted a review of his records and confirmed the defendant had not reported any law enforcement contact.

*While on Pretrial Release, the Defendant Associated with an Escort in Violation of His Conditions*

Beginning on or around May 18, 2023, approximately when ▮ obtained a Temporary Order of Protection against the defendant, the defendant contacted an individual named ▮ ▮ (Ex. 10.) Like ▮ ▮ advertised his services on hot.com and indicated he was available "by the hour or overnight". (*Id.*) In addition, ▮ advertised himself as "discreet" and enjoying "hot times." (*Id.*) The advertisement included what appears to be a description of ▮ ▮ ▮ According to the advertisement, ▮ lives in Las Vegas, Nevada, but travels to Miami Beach, Florida. (*Id.*) The defendant contacted ▮ using the same telephone number on ▮ hot.com advertisement. (Exs. 10, 11.)

Between May 25, 2023 and July 7, 2023, the defendant sent six wires to ▮ for a total amount of $30,500. (*See* Attachment B – Payments Made to ▮ Ex. 12.) Two of these six wires were sent using funds from the same Fortress corporate bank account that was used to pay ▮ (*Id.*) And, as with ▮ the stated reason for the wires was "Consulting". (*Id.*) When the funds in the Fortress corporate account dwindled, the defendant began sending wires to ▮ from Pathfinder Bank Account ending 5514, his personal account. (*Id.*) The stated reasons for the wires was "Production", "Loan" and "Loan Payback". (*Id.*)

This evidence establishes that there is probable cause to believe that the defendant is patronizing a prostitute in violation of the New York Penal Code.

*The Defendant Violated His Conditions by Failing to Seek Approval Before Traveling and Failing to Report to Probation as Directed*

On or around July 10, 2023, the Probation Officer supervising the defendant unsuccessfully attempted to conduct a visit of the defendant at his residence in the Northern District of New York. (*See* Vio. Memo. at 1.) According to the Probation Officer, an individual at the residence, who identified himself as an employee of the defendant, indicated the defendant was in Florida. (*Id.*) On July 11, 2023, the Probation Officer conducted a virtual meeting with the defendant through a videocall application; the defendant was outside a hotel in Miami Beach, Florida. (*Id.*) After reprimanding the defendant, the Probation Officer asked him to provide the Probation Office with documentation relating to the purpose of his travel to Miami Beach. (*Id.*) As of July 28, 2023, the defendant had not provided the requested documents. (*Id.*)

*The Defendant Failed to Comply with a Federal Trade Commission Order Before and After He Was on Pretrial Release*

As part of an agreement to settle the FTC's fraud case against him, the defendant agreed to submit to reporting requirements. (Ex. 14.) Specifically, the defendant agreed to submit to the FTC by October 5, 2022, a compliance report, sworn under penalty of perjury, in which the defendant "must":

> (a) identify all his telephone numbers and all his physical, postal, email and Internet addresses, including all residences; (b) identify all his business activities, including any business for which such Respondent performs services whether as an employee or otherwise and any entity in which such Respondent has any ownership interest; and (c) describe in detail such Respondent's involvement in each such business activity, including title, role, responsibilities, participation, authority, control, and any ownership.

(*Id.* at Section VIII.A.)

The defendant further agreed to submit to the FTC a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

(a) name, including alias or fictitious name, or residence address; or (b) title or role in any business activity, including (i) any business for which such Respondent performs services whether as an employee or otherwise and (ii) any entity in which such Respondent has any ownership interest and over which Respondents have direct or indirect control. For each such business activity, also identify its name, physical address, and any Internet address.

(*Id.* at Section VIII.B.)

The defendant's first annual compliance report was due in October 2022, approximately one month before he was indicted. The report, which the defendant signed under the penalty of perjury, was materially misleading in numerous respects.[3] First, while the defendant represented that he identified "all" his telephone numbers, physical addresses, email addresses, and Internet addresses, including residences (Ex. 15 at 2.a), he did not. The defendant omitted basic key facts, including but not limited to: (i) the physical address where he resided with ▮▮▮▮ (in Baldwinsville, New York); (ii) an email address he used for business activities (▮▮▮▮); and (iii) his personal website that discussed his business activities (▮▮▮▮).[4]

In addition, while the defendant was required to identify all his business activities, including any business for which such he performs services whether as an employee or otherwise and any entity in which such he has any ownership interest, he did not. The defendants disclosed only that he was the founder of Zash Global Media and Entertainment Corporation. (Ex. 15 at

---

[3] The defendant executed a verification stating: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." (Ex. 15 at 6.)

[4] As explained below, the fact that the defendant made materially false and misleading statements to the FTC in October 2022 cannot constitute a violation of his conditions of release because this occurrence pre-dated the defendant's indictment. However, the fact that the defendant knowingly submitted false information to federal regulators under penalty of perjury is evidence that he is unlikely to comply with any conditions of release.

2b&c.) The defendant failed to disclose his interest in Fortress, as well as his role as manager of ZVV Media Partners, LLC ("ZVV"); Vinco Ventures, Inc. ("Vinco") (a publicly traded company with which ZVV purportedly had a joint venture); and Lomotif Private Limited ("Lomotif") (in which ZVV purportedly held a majority interest). (Ex. 16 at 15, 29, 43, 54.)

While on pretrial release, the defendant has failed to comply with the settlement requirement that he submit to the FTC a compliance notice, sworn under penalty of perjury, within 14 days of any change in title or role in any business activity. For example, in or around January 2023, the defendant assumed the role of Chief Strategy Officer for Vinco. (Ex. 17.) The defendant failed to submit the required compliance report to the FTC. (Ex. 14 at Section VIII.B.2.)[5]

The practical effect of the defendant's omissions was that he avoided FTC scrutiny of his business activities at Vinco, ZVV, Lomotif and Fortress – contrary to the FTC's reporting requirements, with which the defendant committed to comply, as part of the settlement of the FTC fraud case against him.

*The Court Issued an Arrest Warrant with No Bond*

On July 28, 2023, the Probation Office submitted a pretrial service violation petition based primarily on the defendant's failure to report to his Probation Officer as directed. The petition also mentioned that the defendant failed to report his contact with law enforcement and then lied about it to his Probation Officer. The petition did not address the balance of the conduct described above, which the government understands was not known to the Probation Office at that time. That same day, the Court signed an arrest warrant with no bond.

---

[5] The defendant briefly held the title of CEO at Vinco in July 2022, but stepped aside as part of the settlement of a lawsuit filed by Vinco against the defendant and other officers and directors, alleging claims for: (i) breach of fiduciary duty, (ii) aiding and abetting breach of fiduciary duty, and (iii) civil conspiracy, among other claims. (Ex. 16 at 46, 78.)

On August 1 and August 2, a Probation Officer repeatedly attempted to contact the defendant to arrange for him to come into the Probation Office and he did not respond. As a result of the defendant's non-responsiveness, on August 2, law enforcement went to look for the defendant and, upon finding him, executed the arrest warrant and took him into custody. On August 4, 2023, at the defendant's request (ECF 60), the Court amended the arrest warrant to permit the defendant to be temporarily released from custody on the morning of August 7, 2023 for the limited purpose of permitting him to participate in his mother's funeral services, which were scheduled to take place on August 7, 2023 and August 8, 2023 (ECF 63, 64). The defendant was directed to self-surrender to the U.S. Marshals in the Southern District of Florida by August 9, 2023 at 3pm Eastern. (*Id.*) The government understands this Court will schedule a revocation hearing after the defendant self-surrenders.

## ARGUMENT

Title 18, Section 3148(b) provides that the district court shall enter an order of revocation and detention if, after a hearing, the district court finds: (i) there was either probable cause that the defendant committed a crime while on release *or* clear and convincing evidence that he violated any *other* condition of release; *and* (2) that the defendant is unlikely to abide by any condition or combination of conditions or release. 18 U.S.C. § 3148(b). A district court's finding that the defendant will not abide by any conditions of release may be established by a preponderance of the evidence. *See, e.g., United States v. Holden*, No. 04-80112, 2004 U.S. Dist. LEXIS 34368, at *20 (S.D. Fla. Oct. 4, 2004) (applying *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). The statute clearly provides that these findings alone are sufficient to justify revocation and detention; a court need not also find that the defendant will flee or pose a danger to the community.

*See, e.g., United States v. Reardon*, No. 1:21-cr-00061-LEW, 2022 U.S. Dist. LEXIS 100152, at *1-2 (D. Me. June 6, 2022); *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990).

### I.  THERE IS CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT REPEATEDLY VIOLATED HIS CONDITIONS

The defendant has repeatedly violated his conditions of his release, including by: (i) failing to notify his Probation Officer about contact with law enforcement; (ii) lying to his Probation Officer about the fact that he had reported contact with law enforcement; (iii) failing to seek approval before traveling from New York to Florida; and (iv) failing to provide information about this trip as requested by his Probation Officer.

*First*, clear and convincing evidence – including police reports, court records, and the Probation Officer's statements to this Court based on his review of the Probation Office's records – demonstrates that the defendant failed to notify his Probation Officer about contact with law enforcement and, when the defendant was questioned about his failure, lied to cover up the violation of his bond condition.

*Second*, clear and convincing evidence – the Probation Officer's statements to this Court – show that the defendant failed to seek approval before traveling from the Norther District of New York to the Southern District of Florida, and that when he was asked for information about this trip, he failed to respond. Counsel for the defendant has argued there is the genuine issue as to whether he violated his conditions because, as counsel reads it, his conditions do not require him to seek such authorization when traveling to and from the Northern District of New York and the Southern District of Florida. (ECF 60 at 3-4.) The defendant's conditions provide "[t]he defendant may travel throughout the United States as authorized by Pretrial Services in advance of any such travel, but without further leave of Court." (ECF 13.) The government understands that the defendant's Probation Officer had told him that he needed to request authorization before

11

traveling and that the defendant sought such authorization on prior occasions when he traveled to and from the Northern District of New York and the Southern District of Florida. That course of conduct is clear and convincing evidence he understood approval was required. Such a course of conduct is also clear and convincing evidence that he intentionally did not seek approval on this particular occasion. In any event, the defendant's refusal to provide his Probation Officer with documentation as to the purpose of the unauthorized travel is no doubt intentional (and further supports the inference that the defendant's decision not to seek authorization in the first place was purposeful).

Importantly, the defendant exhibits a pattern of withholding or concealing information from the Probation Office (as well as others, like local law enforcement and the FTC). While such a pattern is relevant to whether the defendant is unlikely to abide by any condition of release (as discussed below), it also speaks directly to the question of whether the defendant's violations of his conditions are knowing and intentional (which they clearly are).

## II. THERE IS PROBABLE CAUSE TO BELIEVE THE DEFENDANT COMMMITED MULTIPLE CRIMES WHILE ON PRE-TRIAL RELEASE

There is probable cause to believe that the defendant committed at least two state crimes while on pretrial release, namely: (i) making a false statement in violation of Section 210.45 of the Penal Law of the State of New York; and (ii) patronizing a person for prostitution in violation of Section 230.04 of the Penal Law of the State of New York. "[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a [person] of reasonable caution in the belief that the defendant has committed a crime while on bail." *United States v. Gilley*, 771 F. Supp. 2d 1301, 1306 (M.D. Ala. 2011) (quoting *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986)). The government readily meets the probable cause standard with respect to both crimes.

*First*, a reasonable person could find that, on May 5, 2023, the defendant knowingly made false statements in an affidavit initiating a criminal complaint against ▮ ▮.[6] Specifically, there is probable cause to believe that the defendant falsely stated, under oath, that ▮ stole the defendant's 2021 Cadillac Escalade when, in truth, the defendant had bought the vehicle for, and gifted it to, ▮. Both the title and registration were in ▮ name. (Exs. 7, 8, and 9.) And the defendant had a history of giving ▮ things of value, namely $146,700 in cash. (*See* Attachment A; Ex. 4.) Moreover, there is probable cause to believe that the defendant knew he was committing a crime when he made such false statements: the defendant signed the affidavit, which stated "I have read this 2 page affidavit and swear that it is the truth to the best of my knowledge and recollection. I know the meaning of perjury; it is telling of a lie while under oath and I know that false statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the Penal Law of the State of New York." (Ex. 1 at 12-13.)

*Second*, there is clearly probable cause for the defendant's commission of the crime of patronizing a prostitute under Section 230.04, which is a Class A misdemeanor under New York law.[7] The defendant first contacted ▮ around the time ▮ obtained a temporary restraining order against the defendant (Ex. 2 at 16-17); ▮ advertised his services on hot.com "by the hour or overnight", including in Miami Beach (where the defendant traveled) (Ex. 10); ▮

---

[6] The crime of making a punishable written false statement in violation of Section 210.45 has three elements: (i) that the defendant made a false statement which he did not believe to be true; (ii) that the defendant did so in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable; and (iii) that the defendant did so knowingly. *See* CJI2d [NY] Penal Law Section 210.45.

[7] A person patronizes a person for prostitution in violation of Section 230.04 if: (i) he solicits or requests another person to engage in sexual conduct with him in return for a fee; or (ii) he pays a fee to another person pursuant to a prior understanding, as compensation for such person having engaged in sexual conduct with him. *See* CJI2d [NY] Penal Law Section 230.04.

advertisement included information about penis, his sexual health, height and weight, and references to "hot times" and ▮ discretion; and the defendant paid ▮ large amounts of money for a variety of stated reasons, such as "consulting", "production" and "loan" (Attachment B; Ex. 12). Based on these facts, a reasonable person could find that, from May 2023 through July 2023, the defendant requested ▮ engage in sexual conduct with him in return for a fee, or paid a fee to ▮ as compensation for such person having engaged in sexual conduct with him. *United States v. Kahn*, No. 19-80169-CR, 2020 U.S. Dist. LEXIS 20546, at *6-7 (S.D. Fla. Feb. 6, 2020) (revoking bond based on, among other things, a finding that there was probable cause the defendant committed the offense of solicitation of prostitution or lewdness under Fla. Stat. § 796.07).

### III. THE DEFENDANT'S CONDUCT ESTABLISHES BY A PREPONDERANCE OF THE EVIDENCE THAT HE IS UNLIKELY TO ABIDE BY ANY CONDITION OF RELEASE

The defendant, who is charged with engaging in a serious fraud, has established by a preponderance that he cannot be trusted to comply with any condition of release.

As an initial matter, the defendant's actions demonstrate his disregard for the law. The defendant's submission of a false and misleading annual FTC compliance report and the affidavit he submitted to law enforcement show he is willing to make false and misleading statements under penalty of perjury. (Exs. 1 at 12-13; 15.) The defendant's false claim that he told his Probation Officer that he had notified him of his contact with law enforcement when, in truth, he had not, shows that he is willing to lie to the Probation Office. (*See* Vio. Memo. at 2.) The defendant's wire transfers to ▮ that contain bogus descriptions such as "consulting" and "production services" demonstrate his willingness to lie and provide false information in connection with financial transactions. (Ex. 4.) And the defendant's failure to respond to repeated efforts by law

enforcement and the Probation Office to contact him show he is willing to evade and ignore authority. (*See, e.g.*, Ex. 2 at 3, 6.)

In addition, the defendant has an established pattern of withholding and concealing information. For example, the defendant has consistently withheld from the FTC key facts about himself and his business activities, including where he resides and his role as senior executive at a publicly traded company. (Exs. 14, 15, 17.) The defendant attempted to take a secret trip to Miami Beach and, when he was caught and confronted by his Probation Officer, refused to provide information his Probation Officer requested about the purpose for the trip. (*See* Vio. Memo. at 1.) And the defendant attempted to withhold information about contact he had with law enforcement arising from disputes with ▉ ▉ (*Id.* at 2.) The practical effect of the defendant's actions is to frustrate efforts by authorities to supervise his activities.

Finally, neither his indictment nor his conditions of release have deterred the defendant from continuing to associate with escorts. While on pretrial release, the defendant continued to associate with ▉ (Ex. 4), and when ▉ obtained a temporary restraining order against the defendant (Ex. 2 at 16-17), the defendant replaced him with ▉ – with whom there is probable cause to believe the defendant committed a new crime (Exs. 10, 11, 12).

Taken together, these facts establish by at least a preponderance that the defendant is unlikely to abide by any condition of release.

The government conferred with counsel for the defendant before filing this motion and resolved one issue by agreement.[8] In all other respects, the parties were unable to reach an agreement. Our understanding is that the defendant opposes the relief sought.

---

[8] As a result, Ex. 13 was removed and intentionally left blank.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court revoke defendant Theodore Farnsworth's pretrial release and order him detained pending trial.

Respectfully submitted,

GLENN S. LEON, CHIEF
U.S. DEPARTMENT OF JUSTICE CRIMINAL
DIVISION, FRAUD SECTION

By: _____
Christopher Fenton
Trial Attorney
Florida Special Bar Number A5502969
U.S. Department of Justice Criminal Division,
Fraud Section 1400 New York Avenue, N.W.
Washington, D.C. 20005 Phone: (202) 320-0539
christopher.fenton@usdoj.gov

## CERTIFICATE OF SERVICE

I, Christopher Fenton, hereby certify that on August 8, 2023, I caused the foregoing to be filed under seal with the Sealed Clerk of Court in person and that I will cause a copy of the filing to be sent via email to the parties who have entered an appearance in this case.

By: _____
Christopher Fenton
Trial Attorney
Florida Special Bar Number A5502969
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 320-0539
Christopher.Fenton@usdoj.gov

## ATTACHMENT A: PAYMENTS MADE TO ▮

| DATE OF WIRE | AMOUNT OF WIRE | SOURCE OF FUNDS WIRED | STATED REASON FOR WIRE |
|---|---|---|---|
| Apr. 28, 2021 | $12,000 | Business Account (Fortress Entertainment Group Inc.) | "Production Services PA" |
| June 28, 2021 | $12,000 | Business Account (Fortress Entertainment Group Inc.) | "zashapp" |
| Aug. 13, 2021 | $7,000 | Business Account (Fortress Entertainment Group Inc.) | "App. Consulting" |
| Sept. 9, 2021 | $6,000 | Business Account (Fortress Entertainment Group Inc.) | "App. Consulting" |
| Oct. 4, 2021 | $7,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Jan. 24, 2022 | $6,000 | Business Account (Fortress Entertainment Group Inc.) | "QA Services" |
| Feb. 28, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Mar. 10, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "App. Consultation" |
| Mar. 23, 2022 | $6,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Apr. 19, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| May 11, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| June 17, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| July 19, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Aug. 26, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Sept. 21, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Nov. 3, 2022 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | N/A[9] |

---

[9] This payment was made by check, not wire.

| Dec. 2, 2022 | $7,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Dec. 21, 2022 | $7,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Jan. 3, 2023 | $3,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Jan. 24, 2023 | $3,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Feb. 1, 2023 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Feb. 8, 2023 | $4,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Mar. 6, 2023 | $3,700 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Mar. 10, 2023 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| Apr. 10, 2023 | $5,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| May 1, 2023 | $3,000 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| **TOTAL:** | **$146,700** | | |

ATTACHMENT B: PAYMENTS MADE TO ▮

| DATE OF WIRE | AMOUNT OF WIRE | SOURCE OF FUNDS WIRED | STATED REASON FOR WIRE |
|---|---|---|---|
| May 25, 2023 | $2,500 | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| June 1, 2023 | $5,000[10] | Business Account (Fortress Entertainment Group Inc.) | "Consulting" |
| June 6, 2023 | $3,000 | Personal Account | "Production" |
| June 12, 2023 | $7,000[11] | Personal Account | "Loan" |
| June 22, 2023 | $6,000 | Personal Account | "Loan" |
| July 7, 2023 | $7,000 | Personal Account | "Loan"; "Loan Payback" |
| TOTAL: | $30,500 | | |

---

[10] By the end of June 2023, the balance in Fortress Entertainment Group Inc. business account was less than $1,000. (Ex. 18.)

[11] Farnsworth's personal account had only around $10,000 when, on June 8, 2023, it was replenished with wire transfers from Farnsworth's mother and sister totaling $75,000. (Ex. 19.) Farnsworth used the money he received from his mother and sister to make three of the six wire transfers to ▮ (*Id.*)

19